(February 8, 1904.)

## STATE v. ADAMS.

[75 Pac. 258.]

INSUFFICIENCY OF EVIDENCE IN CRIMINAL CASES.

  1. A judgment will be reversed in a criminal case where the evidence fails to connect the defendant with the crime charged.
(Syllabus by the court.)

APPEAL from the District Court of Fremont County. Honorable James M. Stevens, Judge.

Defendant was convicted of a felony. Judgment reversed.

The facts are stated in the opinion.

Briggs & McCutcheon and Chalmers & Jones, for Appellant.

The rules relating to false pretenses and cheats are applicable here. The presentation of false accounts is false pretenses. (7 Am. & Eng. Ency. of Law, p. 754.) The claim, we submit,

must be fair and regular on its face and not plainly absurd or irrational, or such as to be readily detected. (Clark's Criminal Law, p. 282, and citations.) And the statements of representatives must be relied upon. (Clark's Criminal Law, p. 281, and citations; *Rex. v. Dale,* 7 Car. & P. 352; *State v. Stone,* 75 Iowa, 215, 39 N. W. 275; *State v. Williams,* 103 Ind. 235, 2 N. E. 585; *Scott v. State,* 27 Tex. App. 264, 11 S. W. 320; *People v. Mauritzen,* 84 Cal. 37, 24 Pac. 112; *State v. Clark,* 46 Kan. 65, 26 Pac. 481; *In re Shurman,* 40 Kan. 533, 20 Pac. 277; *Reg. v. Jones,* 15 Cox C. C. 475.) To authorize a conviction, it must be shown that the prisoner knew the representations actually made to be false, and that he intended to defraud. (*Sharp v. State,* 53 N. J. L. 511, 21 Atl. 1026; *People v. Wakely,* 62 Mich. 297, 28 N. W. 871.) In cases of this character, the statute, being highly penal, is to be strictly construed. (Bishop on Statutory Crimes, 2d ed., sec. 193, note 3, and sec. 192; 4 Am. & Eng. Ency. of Law, p. 643, and citations.)

John A. Bagley, Attorney General, for the State.

The defendant is prosecuted for presenting a false claim for payment and not for obtaining money under false pretenses. Section 6385, Revised Statutes, provides: "Every person who, with intent to defraud, presents for allowance or for payment to any territorial board or officer, or to any county, city, ward or village board of officers, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher or writing, is guilty of a felony." (*Hauck v. State,* 45 Ohio St. 439, 14 N. E. 92.) "When the false and fraudulent claim was presented by him to this board for the purpose of procuring its allowance, the crime for which he was indicted was consummated." This is a separate and distinct offense from the offense of obtaining money under false pretenses. (Rev. Stats., sec. 7096.) Presenting false claims to public officers is an offense of a kindred nature to false pretenses and cheats, but is an entirely separate and distinct offense. (12 Am. & Eng. Ency. of Law, 853; *People v. Carolan,* 71 Cal. 195, 12 Pac. 52; *People v. Oyer,* 83 N. Y. 436, 453.)

STOCKSLAGER, J.—This is an appeal from the judgment and an order overruling a motion for a new trial. The prosecution was based on section 6385, Revised Statutes of Idaho, which provides that "Every person who, with intent to defraud, presents for allowance or for payment to any territorial board or officer, or to any county, town, city, ward or village board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is guilty of a felony."

The charging part of the information is as follows, to wit: "That said R. B. R. Adams, on or about the thirteenth day of June, A. D. 1902, at the county of Fremont, state of Idaho, did willfully, unlawfully, and feloniously with intent to defraud Fremont county, state of Idaho, present for allowance to the board of county commissioners of said Fremont county, state of Idaho, who were authorized to allow the same if genuine, a false and fraudulent claim, a statement in writing duly verified by him, on the bounty fund of Fremont county, state of Idaho, for the sum of two hundred thirty-seven dollars, purporting to be for one hundred and fifty-eight coyote scalps, contrary to the form, force and effect of the statute in such cases made and provided, and against the power, force and dignity of the state of Idaho."

Defendant demurred to this information which was overruled by the court and which is as follows, to wit: "1. That the said information does not substantially, or otherwise, conform to the requirements of sections 7677, 7678 and 7679 of the Revised Statutes of Idaho, or either or any of said sections. 2. That the facts stated in said information do not constitute a public offense."

Counsel for appellant urge in this court that it was error in the lower court to overrule this demurrer. We do not think so. The information, as we read it, is in substantial compliance with the statute, and charges a crime under the provisions of section 6385 of the statute.

The defendant was tried and convicted of the crime charged in the information, and after overruling a motion for a new trial he was sentenced to serve a term of one year in the peni-

tentiary in this state. It is earnestly urged by counsel for appellant that the evidence was insufficient to support the verdict of the jury and the judgment of the court. As we read the record in this case, this is the serious question for our determination.

The bill of exceptions contains the evidence upon which the conviction was had. The first witness for the state was J. W. Ayers, a justice of the peace, residing at Market Lake, Fremont county, who testified as follows, to wit: "I am acquainted with the defendant Adams, and he has resided there since I became acquainted with him in 1889. I am his brother in law; saw him on the twelfth day of June, 1902, at my residence, about four miles south of Market Lake, in the presence of my wife. He came there to turn in some coyote scalps before me, as a justice of the peace."

Witness identified paper marked "Plaintiff's Exhibit A," being a claim for one hundred and fifty-eight coyote scalps at $1.50 each, and in the usual form; stated that he saw it on that day, and that the jurat bears his signature, and the claim of the defendant, R. D. R. Adams; and he swore the defendant to the bill. Defendant there had a cigar-box containing coyote ears, scalps, tips of ears, the box being of the capacity of fifty cigars, "but I do not know the kind of box or brand; the cover was tacked down. I counted the ears out of the box and the number agreed with the number of ears mentioned in the claim." Witness was unable to identify the box or the ears contained in the box. Testifies: "After I counted the ears I placed them in the box and nailed it up; gave them to Mr. Adams with the bill and he left my place. Next saw the bill in probate court at St. Anthony at the preliminary examination. I told the defendant to send the bill to the clerk of the court with the ears."

On cross-examination he said: "I do not know who wrote the address on the cigar-box marked 'Plaintiff's Exhibit B'; addressing said box to A. M. Carter, St. Anthony, Idaho. I do not know who wrote any of the words, figures, or letters on said box. I did not write any of them."

Charles R. Harwood testified: "Am in the mercantile busi-

ness at Market Lake; was postmaster at that place in June and July, 1902, and was in the postoffice during those months. The cigar-box marked 'Plaintiff's Exhibit B' was brought to me to be registered. I wrapped it up and addressed it from J. W. Ayers, Market Lake, to A. M. Carter, St. Anthony, Idaho, and registered it accordingly. The handwriting on the package is mine. I addressed it as from J. W. Ayers from Market Lake, Idaho, because I was told to do so, but do not know who delivered it to me. It is my custom always to put on the package who it is from and who it is to, with the numbers, this being registered No. 52. There were no other marks on the package. It was registered June 12, 1902. I do not remember whether I was told what was the contents or not, and don't think I looked into the box at all. I registered a good many packages previous to that time and thereafter, I guess, to A. M. Carter at St. Anthony, almost all of them being from J. W. Ayers, justice of the peace, but I don't think I received this box from J. W. Ayers and don't remember from whom I did receive it."

A. M. Carter testified: "In June and July, 1902, I was clerk of the board of county commissioners and auditor and recorder of Fremont county." He identified the bill and says he first saw it on June 13, 1902, in his office. When he received it he put it in the bill files with others. It was afterward presented to the board of county commissioners for allowance; that he received the cigar-box, "Plaintiff's Exhibit B"; that he received it by registered mail June 13, 1902, at his office, when he marked it with the name of Adams and put it in the vault with other coyote scalp claims in a department set apart for them, there being a whole lot of them. On cross-examination he said the box was brought from the postoffice by the janitor, who received all the mail and receipted for registered packages. It was his custom, upon receipt of such packages, to unwrap them and count the contents, then put them back, where they remained in the vault, which was opened during office hours. The general public or anybody that wanted to, whether connected with the office or not, had access to the records in the vault, but not to the scalp department, although they could have gone in

there if they wanted to. Not everybody was permitted to go in the vault. "Sometimes I refused admission. Not more than ten or twelve people in the county ever went into the vault. They were mostly officers around the courthouse, a few attorneys and abstractors."

On redirect examination he said: "I don't remember ever having allowed anyone to handle the coyote scalps or ears received and placed in the vault while I was in the office. People might have gone into the vault during office hours without my knowledge."

Witness could not identify the cigar-box, "Plaintiff's Exhibit B," and would not say the contents were the same at the time of the trial as when received.

Victor Hegsted testified: "That he succeeded A. M. Carter as clerk of the court, auditor, etc., and the box and contents were received by him and thereafter kept in the vault."

Mr. Sheley testified for the state and related a conversation between himself, defendant and one Short; says they talked about a partnership for the purpose of trapping coyotes; said Short proposed to go into the business of manufacturing coyote ears, but that he and defendant informed him they would not enter into any such business; says Mr. Adams said if they could not make a living out of it without making the ears he would not have anything to do with it.

A. M. Carter, recalled, testified that he had such experience that he could identify the genuine ear. The ears contained in cigar-box, "Plaintiff's Exhibit B," are not genuine.

J. W. Ayers, recalled, said: "When defendant brought a box of coyote ears on or about June 12, 1902, I counted the ears and surely thought they were genuine at that time or I would not have received them; made the necessary examination of the ears and saw nothing wrong with them, and they were genuine to the best of my knowledge; I am familiar with genuine ears."

Mrs. J. W. Ayers testified: "Was at home on the twelfth day of June, 1902, when defendant came there; I saw the box purporting to be coyote ears at that time in his possession, but did not examine them; had the box in my hands but did not

look at the ears." Exhibit B (cigar-box) was shown witness and she testified it was not the box defendant brought to the justice's office June 12, 1902; said the box defendant brought had the picture of a lady's head, whilst exhibit "B" had the picture of a man's head.

This seems to be all the evidence introduced on behalf of the state, whereupon counsel for appellant moved for a peremptory instruction on the ground that the state had failed to prove its case, the evidence being wholly insufficient to justify the conviction of the defendant; that the court is without jurisdiction to try the cause, for the reason that the offense committed by the defendant, if any there be, is a misdemeanor and not a felony; that there is a variance in the allegations of the information and the proof, in that the allegations charged the defendant with presenting for allowance to the board of county commissioners a false and fraudulent claim for bounty on one hundred and fifty-eight coyote scalps, and the evidence showing that coyote ears were presented instead of scalps.

We have quoted the evidence in this case almost in its entirety as it appears from the bill of exceptions. We have done so for the reason that by reason of the conclusion we have reached we feel that the evidence should be shown in the opinion.

It is not a question of conflict in the evidence we are called upon to determine in this case; it is simply the question of the sufficiency of the evidence to support the verdict of the jury and the judgment of the court.

It would seem to us that the state succeeded in surrounding the defendant with very serious doubts of his guilt in its attempt to establish guilt.

From the testimony of Mr. Ayers, the justice of the peace before whom the affidavit of claim was prepared, it is shown that the ears contained in the box were genuine; that he counted them, replaced them in the box and nailed them up.

By the testimony of witness Sheley it is shown that in a certain conversation with defendant and one Short, in which conversation the question of spurious ears was mentioned by Short,

defendant said if he could not make a living out of the business without manufacturing ears he would not engage in it.

By the testimony of witness Carter it is shown that the vault in which all bounty scalps and ears were kept was open and that others than himself had access to it. It is established by the evidence of Mrs. Ayers, wife of the justice of the peace, Ayers, that on the day the claim was sworn to before her husband she was present and had the cigar-box containing the scalps in her hands; that she noticed the box and that it contained the picture of a woman's head; also that "Plaintiff's Exhibit B," containing the spurious ears, was not the same box; it containing the head of a man. It was not shown that defendant delivered the box to the postmaster at Market Lake, to be sent to St. Anthony by registered mail.

The only evidence connecting the defendant in any way with the transaction is that of the justice of the peace, and that is certainly in his favor rather than in any way against him.

We think the case is too much surrounded with doubt, owing to the fact that there were too many opportunities for others to perpetrate the fraud to warrant us in saying that this defendant should serve a term in the penitentiary of the state for the crime charged to him. Other questions are raised by counsel for appellant, but in our view of the case it is unnecessary for us to pass upon them.

The judgment is reversed and cause remanded for further proceedings in harmony with the views herein expressed

Sullivan, C. J., and Ailshie, J., concur.