Maria Brown, defendant below, plaintiff in error, *vs.* State of Delaware, plaintiff below, defendant in error.

*Criminal Law—Writ of Error—Harboring a Female Under Eighteen years of age for Purpose of Sexual Intercourse— Statute—Evidence—Intent—Mens Rea—Harmless Error—Judgment below Affirmed.*

1. Where on an indictment founded upon *Section 1, Chapter 686, Volume 18, Laws of Delaware*, as amended by *Chapter 127, Volume 20, Laws of Delaware*, which rendered it a misdemeanor to receive, employ, harbor or use any female under the age of eighteen years for the purpose of sexual intercourse, there was a verdict of guilty, *held:*

a. That the Court did not err in excluding or striking out testimony showing or tending to show that the girl received, harbored, etc., represented herself at the time to be over eighteen and that her appearance was such as to warrant the appellant in believeing that she was. .

b. That the Court did not err in charging that if the jury should believe that the young girl received, harbored, etc., "was under eighteen years of age—it does not matter what she represented—at the time she entered this house, that she did enter it, and it was the house of this defendant, and that she was there harbored for sexual intercourse and that she there indulged in it, in this County, then all the requirements of this indictment would be met, and your verdict should be guilty."

c. That the Court did not err in refusing to charge that the defendant was not absolutely bound to know the age; that is, whether M. L. was under eighteen years of age.

2. The doctrine of *mens rea* discussed and defined.

3. That a mistake of facts, on reasonable grounds, to that extent that, if the facts as believed, the acts of the prisoner would make him guilty of no offense at all, is an excuse, and that such an excuse is implied in every criminal charge and every criminal enactment in England and also in this country, but that the act of receiving and harboring a female of any age for the purpose of defilement or prostitution is not such an act, because it invovles a moral turpitude revolting to the better instincts of the whole community, and is an act universally recognized to be not only a grievous wrong to the individual, but a serious injury to society at large, and in addition it is contrary to the law, being a violation of the Ordinance of the City of Wilmington.

(*January* 19, 1909.)

Nicholson, Ch., and Spruance and Grubb, J. J., sitting.

*Robert G. Harman* for plaintiff in error.

*Robert H. Richards*, Attorney-General, for defendant in error.

WRIT OF ERROR to the Court of General Sessions in and for New Castle County.

NICHOLSON, CH., delivering the opinion of the Court:

Maria Brown, the plaintiff in error, was tried in the Court of General Sessions of the State of Delaware, in and for New Castle County, upon an indictment founded upon *Section one of Chapter 686, Volume 18, Laws of Delaware*, as amended by *Chapter 127, Volume 20, Laws of Delaware*, which reads as follows:

"Section 1. Whoever takes, receives, employs, harbors or uses, or causes or procures to be taken, received, employed, harbored, or used, a male or female under the age of eighteen years for the purpose of sexual intercourse; or whoever being proprietor or proprietress of any house of prostitution, reputed house of prostitution, or assignation, house of ill fame or assignation, harbors or employs any male or female in any such house, under the age of eighteen years, under any pretext whatever, shall be deemed guilty of a misdemeanor and upon conviction thereof in the Court of General Sessions of the Peace and Jail delivery of this State shall be fined not more than one thousand dollars, or imprisoned for a term of not more than seven years, or both, at the discretion of the Court."

The indictment contained three counts and the jury brought in a verdict of guilty in the manner and form as she stood charged in said indictment, and recommended the mercy of the Court.

The assignments of error are eleven in number, the first, second, third, fourth, fifth, sixth, seventh, eighth, and ninth being based upon exceptions to the rulings of the Court during the course of the trial, excluding or striking out testimony showing, or tending to show that the girl received, harbored, etc., by the appellant for sexual intercourse represented herself at the time to be over eighteen, and that her appearance was such as to warrant the appellant in believing that she was. The tenth and

eleventh are based upon exceptions to the charge of the Court to the jury.

These last two assignments of error, the tenth and eleventh, will be considered first, and are as follows:

"10. The Court erred in charging the jury as follows: 'If you should believe, therefore, from the testimony in this case that this young girl was under 18 years of age—it does not matter what she represented—at the time she entered this house, that she did enter it, and it was the house of this defendant, and that she was there harbored for sexual intercourse and that she there indulged in it, in this County, then all the requirements of this indictment would be met, and your verdict should be guilty.'"

"11. The Court erred in not charging the jury, as follows, as prayed for by the defendant:

'1. If the jury should believe that the defendant exercised the care and made the inquiry that was required of her under the circumstances to ascertain the age of Mabel Lessig; and from her dress, manner, personal appearance and physique, and her statements to the defendant that she was 22 years of age, she was deceived as to her age, and being so deceived, she honestly believed she was over the age of 18 years—the jury should render a verdict of not guilty.

'2. The defendant was not absolutely bound to know the age, that is, whether Mabel Lessig was under the age of 18 years of age, but she is bound to use all reasonable means for ascertaining that fact whether she was under the age of 18 at the time she came to her house. If she did use all reasonable means necessary under the circumstances to ascertain whether she was under the age of 18 or not, and honestly believed that she was over the age of 18 and was deceived, then you may render a verdict of not guilty.' "

The whole contention of the appellant appears in the prayer above quoted, but it is expressed in the brief of her counsel, as follows:

"D"

"If one violate the law through the deception or falsehood of

another, and it be shown that the person charged with violating the law exercised the care and made the inquiries required of him by the law, such person in the eye of the law is innocent of wrongdoing and has committed no legal offense; for to *make* one guilty one must have a *mens rea* or guilty mind, unless the statute *expressly* or by *necessary implication* dispenses with the requisite.

"(1)   The intent entered into this case as much as in the case of *State vs. Fahey* (selling liquor to a minor).

"(2)   That the question of one's being engaged in a lawful or unlawful business or act, does not enter into, change, or affect the question of *intent*."

The argument of appellant's counsel in support of these propositions discusses the fundamental principles of the common law in relation to criminal responsibility, and, together with the brief filed by the Attorney-General, presents an interesting review of all the important cases in which the meaning and application of the much quoted and discussed maxium "*actus non facit reum, nisi mens sit rea*" have been discussed.

*Lord Coke* uses this maxium, as we quote it, in 3 *Inst.*, *fol.* 6, in reference to the words of the act 25 *Edw. III, c.* 2, and it is sometimes said to be the fundamental maxium of the whole criminal law.

Counsel for the complainant quotes it as stated by Lord Abinger in the Englith form, as follows:

"It is a maxium older than the law of England, that no man is guilty unless his mind is guilty.   *Regina vs. Allday*, 8 *Car. and P.* 136."

The latin form is commonly used, however, and it is as the doctrine of "*mens rea*" that it is usually referred to and discussed.

*Sir James Stephens*, the great modern authority on the criminal law of England, speaks of the maxium somewhat caustically, as follows:

"Like many other latin sentences supposed to form a part of the Roman law, the maxium not only looks more instructive than it really is, but suggests fallacies which it does not pre-

cisely state." *Stephens' His . Crim. Law, vol. 2, p. 95.*

So much misapprehension and confusion though appear in the cases and text books in relation to this maxium, that it seems not undesirable to preface the discussion of its application to the pending cause, by quoting a couple of paragraphs from Stephens, which tend to remove some common misapprehensions as follows:

"It also suggests the notion that there is some state of mind called a '*mens rea*,' the absence of which, on any particular occasion, deprives what would otherwise be a crime of its criminal character. This also is untrue. There is no one such state of mind, as any one may convince himself by considering the definitions of dissimilar crimes. A pointsman falls asleep, and thereby causes a railway accident and the death of a passenger; he is guilty of manslaughter. He deliberately and by elaborate devices produces the same result: he is guilty of murder. If in each case there is a '*mens rea*,' as the maxium seems to imply, '*mens rea*' must be a name for two states of mind, not merely differing from but opposed to each other, for what two states of mind can resemble each other less than indolence and an active desire to kill?

"The truth is that the maxium about '*mens rea*' means no more than that the definition of all or nearly all crimes contains not only an outward and visible element, but a mental element, varying according to the different nature of different crimes. Thus, in reference to murder, the '*mens rea*' is any state of mind which comes within the description of malice aforethought. In reference to theft the '*mens rea*' is an intention to deprive the owner of his property permanently, fraudulently, and without claim of right. In reference to forgery the '*mens rea*' is anything which can be described as an intent to defraud. Hence the only means of arriving at a full comprehension of the expression '*mens rea*' is by a detailed examination of the definitions of particular crimes, and therefore the expression itself is unmeaning."

One other quotation will be made, in this connection, from

the same author, because it so admirably illustrates the meaning of "intent" as an element of crime, and cannot but be helpful in arriving at a correct understanding of the kind of "intent" that in the cause before us would be necessary to constitute the crime charged in the indictment before the Court below:

' There is, however, a second and more general way in which intention is an element of crime. Intention, as I have already pointed out, is an element of voluntary action, and as all crimes (except crimes of omission) must be voluntary actions, intention is a constituent element of all criminal acts. It would be a mistake to suppose that in order that an act may amount to a crime the offender must intend to commit the crime to which his act amounts, but he must in all cases intend to do the act which constitutes the crime. For instance, there are cases in which a person may commit murder, without intending to commit murder, but no case in which he can commit murder without intending to do the act which makes him a murderer. Suppose, for instance, a robber fires a pistol at the person robbed, intending only to wound him, and does actually kill him, he is guilty of murder, though he had no intention to commit murder, but he cannot be guilty unless he intended to fire the pistol. If a man recklessly and wantonly throws a lighted match into a haystack, careless whether it takes fire or no, and so burns down the stack, he would be guilty of arson, but if he did not intend to throw the lighted match on the haystack I do not think he would be guilty of any offense at all unless death was caused, in which case he would be guilty of manslaughter."

In *Regina vs. Prince*, L. R. 2 C. C. R. 154, Lord Esher states the following principle which was quoted with approval in one of the majority opinions in the great leading case of *The Queen vs. Tolson*, 23 Q. B. D. 168, 190, "that a mistake of facts on reasonable grounds, to the extent that, if the facts were as believed, the acts of the prisoner would make him guilty of no offence at all, is an excuse, and that such an excuse is implied in every criminal charge and every criminal enactment in England."

It is the application of this principle to the statute under which the appellant was indicted that constitutes the precise question before us.

The definitions of the common law offenses are generally complete, and have been made so clear and precise by innumerable decisions, that upon them no real difficulty can arise as to the question of criminal knowledge, but with statutory offenses it is different.

In quite a number of them the Courts have experienced not a little difficulty in arriving at a definition of the statutory crime that should so clearly describe the nature of its constituent moral elements as to make plain how far ignorance would exclude their presence.

The statutory offenses which have occasioned a thorough sifting of this question of the effect of ignorance on criminal responsibility that is now before us, are bigamy, abduction from parent or guardian of females under a certain age, or using or harboring, etc., such females for the purpose of defilement or prostitution, selling liquor to minors, selling impure articles of food, etc., etc.

With regard to some of these, the Courts have been very greatly perplexed, where the language of the statutes is not explicit, and, as stated by the appellant's counsel, there is unquestionably a conflict of authority in respect to several, but with regard to such offenses against females of tender age, as that with which the appellant stood charged in the indictment before the Court below, there is absolute unanimity. There appears to be no case decided by a competent tribunal, either in England or America, under a statute similar to the one under consideration, in which the Court did not hold that the knowledge of the age of the young girl abducted or defiled, or received or harbored for defilement or prostitution, did not constitute an element or ingredient of the offense. Invariably in such cases, it has been held that whoever committed the offense, did it at his peril so far as the girl's age was concerned, and that ignorance or mistake in respect to her age would constitute no

defense; in other words, that knowledge of her age did not constitute an element of the offense.

There has been some slight difference in the reasoning upon which the decisions have been based, but no more than is sure to occur in any discussion that involves questions of such an abstract or philosophical sort.

*Regina vs. Prince*, cited *supra*, is the leading English authority. In that case the prisoner was indicted under 23 and 24 *Vict.*, *c.* 100, *s.* 55, for "unlawfully taking an unmarried girl, then being under the age of sixteen years, out of the possession and against the will of her father." The jury found that the prisoner *bona fide* believed, upon reasonable grounds, that she was eighteen. It was argued before the fifteen judges of England as a Crown Case Reserved. The Court (*Dissentiente* BRETT, J.) upheld the conviction. Two judgments were delivered by a majority of the Court, in each of which several judges concurred, whilst three of them concurred in both.

Another great leading English case is *The Queen vs. Tolson*, cited *supra*. This was a case of bigamy, in which it was held by nine of the judges that "a *bona fide* belief on reasonable grounds of the death of the husband at the time of the second marriage offered a good defense to the indictment." All the judges, however, concurred in their approval of the decision of the Court in *Regina vs. Prince*, and the grounds of the decision in that case were stated as follows by WILLS, J., one of the majority judges in the *Tolson* case:

"The first of the two, being the judgment of nine judges, upheld the conviction upon the ground that, looking to the subject-matter of the enactment, to the group of sections amongst which it is found, and to the history of legislation on the subject, the intention of the legislature was that if a man took an unmarried girl under sixteen out of the possession of her father against his will, he must take his chance of whether any belief he might have about her age was right or wrong, and if he made a mistake upon this point so much the worse for him; he must bear the consequences. The second of the two judgments, being

that of seven judges, gives a number of other reasons for arriving at the same conclusion, some of them founded upon the policy of the legislature as illustrated by other associated sections of the same Act. This judgment contains an emphatic recognition of the doctrine of the 'guilty mind,' as an element, in general, of a criminal act, and supports the conviction upon the ground that the defendant, who believed the girl to be eighteen and not sixteen, even then, in taking her out of the possession of the father against his will was doing an act wrong in itself. 'This opinion,' says the judgment, 'gives full scope to the doctrine of the '*mens rea.*'

"The case of *Reg. v. Prince,* ( *Law Rep.* 2 *C. C. R.* 154), therefore, is a direct and cogent authority for saying that the intention of the legislature cannot be decided upon simple prohibitory words, without reference to other considerations. The considerations relied upon in that case are wanting in the present case, whilst, as it seems to me, those which point to the application of the principle underlying a vast area of criminal enactment, that there can be no crime without a tainted mind, preponderate greatly over any that point to its exclusion."

Sir James Stephens, who was also one of the majority judges in *The Queen vs. Tolson,* states the ground upon which the Court based their decision in *Regina vs. Prince,* as follows:

"Lord Bramwell's judgment proceeds upon this principle: 'The legislature has enacted that if any one does this wrong act he does it at the risk of her turning out to be under sixteen. This opinion gives full scope to the doctrine of the *mens rea.* If the taker believed he had her father's consent, though wrongly, he would have no *mens rea;* so if he did not know she was in any one's possession nor in the care or charge of anyone. In those cases he would not know he was doing the act forbidden by the statute.'

"All the judges therefore in *Reg. v. Prince* agreed on the general principle, though they all, except Lord Esher, considered that the object of the legislature being to prevent a scandalous and wicked invasion of parental rights (whether it was to be

regarded as illegal apart from the statute or not) it was to be supposed that they intended that the wrongdoer should act at his peril.

"As another illustration of the same principle, I may refer to *Reg. v. Bishop* ( 5 *Q. B. D.* 259). The defendant in that case was tried before me for receiving more than two lunatics into a house not duly licensed, upon an indictment on 8 and 9 *Vict., c.* 100, *s.* 44. It was proved that the defendant did receive more than two persons, whom the jury found to be lunatics, into her house, believing honestly, and on reasonable grounds, that they were not lunatics. I held that this was immaterial, having regard to the scope of the Act, and the object for which it was apparently passed, and this Court upheld that ruling.".

*Bishop* in his work on statutory crimes, 3 *Ed., sec.* 632, cited by the Attorney-General, states the law, as follows:

"The doctrine reached in England had already been held in Iowa. It was there adjudged inadmissible for the defendant to show, in answer to the charge, that, before the enticement, the girl told him she was over fifteen years of age."

The following English cases cited by the Attorney-General, may also be quoted:

*Reo. vs. Olifer*, 10 *h Cox C. C.* 402, which was a case where the defendant was charged with a violation of said *Section* 55 of the Act of 24-25 *Vic* ., and in which it was proved that the girl told the defendant she was seventeen years of age and that she looked to be fully that age, whereas, as a matter of fact, the girl in question was only fourteen years of age, Baron Bramwell was of the opinion, "That any man who thus dealt with an unmarried girl did so at his own peril; and if she turned out to be under sixteen he was liable under this act."

*Reg. vs. Booth*, 12*th Cox C. C.* 231, the defendant was charged with a violation of the same section of the same statute and in which case the girl in question was proved to have been of the age of fifteen years, Quain, Justice, charging the jury, says:

" 'You may have nothing to do with what was the prisoner's motive in taking this girl away. It is utterly immaterial whether

he thought her eighteen years of age, or less.   If he undertook the responsibility of taking an unmarried girl out of her father's house, though she consented to go, and although he didn't know her to be under the age of sixteen, he is responsible for his act.''

*Reg. vs. Mycock, 12th Cox C. C.* 28, which was a charge of violating the same section of the same Act, it was sought to be shown that the girl in question looked to be eighteen or nineteen years of age, and that the defendant honestly so believed her.   Willes, Justice, said:

"The prisoner was bound to ascertain the girl's age; or failing that, to take the consequences of abducting her."

From the American cases we will cite *State vs. Ruhl, 8th Iowa, page* 449.   In this case it was attempted to be proved by the defendant, in his own behalf, that he had reasonable ground to believe, and did believe, that at the time of his taking away the female child under the age of fifteen years, such child was, in fact, over fifteen years of age; and it was attempted to be proved that the girl in question had told the defendant that she was over the age of fifteen.   The testimony was not admitted at the trial, an exception was taken to this ruling and argued in the Supreme Court.

Chief Justice Wright, delivering the opinion of the Supreme Court, upon this point, says:

''The object of the proposed testimony was to show that the defendant believed or had  good  reason  to  believe,  that the prosecuting witness was, at the time of taking or enticing away, over fifteen years.   Would such proof aid the defendant, if, in fact, the female was under the age named?   We think not.   It is not like the case stated by the appellant, and found in the books, of a married man, through a mistake of the person, having intercourse with a woman whom he supposed to be his wife, when she was not.   In such case there is no offense.   For none was intended, either in law or morals.   In the case at bar, however, if defendant enticed a female away, for the purpose of defilement, or prostitution, there existed a criminal or wrongful intent, even though she was over fifteen.   The testimony offered was,

therefore, irrelevant, for the only effect of it would have been to show that he intended one wrong, and by mistake committed another. The wrongful intent to do the one act, is only transposed to the other. And though the wrong intended was even not indictable, the defendant would still be liable, if the wrong done is so. * * * The wrong intended but not done, and the wrong done but not intended, *coalesce*, and together constitute the same offense, not always in the same degree, as if the prisoner had intended the thing intentionally done.'

In the case of *Lawrence vs. The Commonwealth*, 30 *Grattan, page* 845, the Supreme Court of Virginia held that the prisoner might be convicted, in an indictment, for statutory rape of a girl under the age of twelve years, even though the girl told him she was over twelve years of age, and he had reasonable cause to believe she was over that age. The Court said that he must take the risk, and if she is not twelve years of age, he is guilty.

In the case of *State vs. Johnson*, decided in the Supreme Court of Missouri in 1893, and reported in 22 *South Western*, 463, the Court said:

"Another contention is that the Court committed error in failing to instruct the jury that if defendant had good reason to believe, and did believe, that Rosa, at the time of the offense committed was over eighteen years of age, then he could not be convicted   This seems to be rather an anomalous position and is certainly not sustained by reason or authority. For this reason, any person guilty of carnally and unlawfully knowing any female child under the age of fourteen—which by *Section* 3480 *Rev St. of* 1889, is declared to be rape and a felony—would not be felony if he believed, and had good reason to believe, that she was over that age. Such is not the law, as we understand it, and as it has been ruled by this Court. (Citing authorities). If defendant thought at the time of shielding himself under such a pretext, he should have been more careful in selecting his victim. Upon him alone rested the responsibility of his actions, and the fact that he may have believed or that he may have had good

reason to believe that she was over eighteen years of age, is no justification or excuse.'

In the case of *State vs. Houx*, 19 *South Western, page* 37, and also decided by the Supreme Court of Missouri, it is said:

"Defendant offered, and the Court refused to admit, testimony tending to prove that he had reason to believe that the prosecutrix was, at the time of the carnal knowledge, over the age of twelve years. We do not think that the court committed error in this. His intent to violate the laws of morality and the good order of society, though with the consent of the girl and though in a case when he supposes he shall escape punishment, satisfied the demands of the law, and he must take the consequences."

In the case of *State vs. Basket*, 19 *South Western*, 1097, the Supreme Court of Missouri again said:

"He (the defendant) testified that he did not know her age, but offered to show how old he took her to be, which the Court refused, on objection by the State, to permit him to do; and in this we think the Court committed no error, etc"

Counsel for the appellant recognizing the unanimity of the decisions in this class of definitions, bases his argument chiefly upon *State vs. Fahey*, 5 *Penn.* 585, a case of selling liquor to a minor, and *State vs. Costen* and *State vs. Iannucci*, 4 *Penn.* 193, cases of carrying concealed a deadly weapon, and similar decisions in England and America in cases of selling liquor to a minor, *Jamison vs. Burton*, 43 *Ia.* 282; or giving liquor to a police officer while on duty, *Sherras vs. De Rutzen*, 1 *Q.B.* (1895) 918; or selling adulterated food, *Derbushire vs. Houlston*, 1 *Q. B.* (1897) 772.

. Of these cases it can only be said that in the ones concerning carrying concealed a deadly weapon the element of knowledge does not enter, and therefore whether rightly or wrongly decided by the Court of General Sessions, they are entirely irrelevant.

It is also obvious that the other cases belong to distinct classes of offenses. With regard to the *Fahey* case (selling liquor to a minor), upon which appellant's counsel laid particu-

lar stress, it may be observed that while it is true that a considerable number of citizens believe the sale of liquor to be an injury to public morals and an evil thing in itself, yet a very important element in the construction of the statute under which that case arose was the fact that the sale of liquor was expressly licensed by law, while, in the pending cause, on the other hand, the act of receiving and harboring a female of any age for the purpose of defilement or prostitution involves a moral turpitude revolting to the better instincts of the whole community, and is an act universally recognized to be not only a greivous wrong to the individual, but a serious injury to society at large, and in addition it was contrary to law, being a violation of an ordinance of the City of Wilmington.

In view of these conclusions it follows that the first nine assignments of error, which relate to the exclusion or striking out of testimony, present no difficulty and may be very briefly disposed of.

It has been shown that all testimony relating to the appearance of the girl and the declarations made by her with regard to her age at the time she was received, harbored, etc., are entirely irrelevant and immaterial, in so far as they might effect the belief or knowledge of the appellant, and in so far as they are urged to be material, as tending to show that the girl was not under the age of eighteen, even granting that they were proper on cross-examination, they cannot be considered as a ground for reversal.

In *State vs. Fisher*, 1 *Penn.* 388, 396, this Court held, when it was contended that the Court below erred in admitting certain testimony, as follows:

"We do not say that the evidence in the case, to which no objection was made, was sufficiently strong and conclusive in our judgment to warrant a verdict of guilty in a case where the penalty is death; and it would be highly improper for this Court to express any opinion thereon,  But we do say that from an examination of the whole record we are satisfied that the result would have been the same in the Court below if the testimony to which objection was made had been entirely eliminated

from the case.    And being clearly of the opinion that the admission of such testimony worked no injury to the plaintiff in error and that he was not prejudiced thereby, we must refuse to reverse the judgment of the Court below."

In the present cause, even granting the contention of appellant's counsel that the testimony in question was improperly excluded, yet it is apparent from a consideration of the whole record, particularly the direct testimony of the girl's mother as to her age, that the exclusion "of such testimony worked no injury to the plaintiff in error, and that she was not prejudiced thereby."

We are clearly of opinion, therefore, that there was no error, and that we must refuse to reverse the judgment of the Court below.

The judgment of the Court below is affirmed.