STATE *vs.* CHARLES H. SHOCKLEY

1.   CRIMINAL LAW—COURT SHOULD NOT DISTURB VERDICT ON ISSUE OF FACT CLEARLY PRESENTED.

Where issue of fact is clearly presented, judgment of jury should not be disturbed by court.

2.   INTOXICATING LIQUORS—EVIDENCE HELD TO SUSTAIN CONVICTION FOR POSSESSION.

Evidence *held* to sustain conviction for unlawful possession of spirituous liquor.

3.  INTOXICATING LIQUORS—IN PROSECUTION FOR UNLAWFUL POSSESSION
    STATE HELD NOT REQUIRED TO PROVE LIQUOR WAS POTABLE, OR CAP-
    ABLE OF USE AS BEVERAGE.

   In prosecution under *Act. Gen. Assem. Feb.* 27, 1917 (29 *Del. Laws, c.*
10, §§ 1, 2), for unlawful possession of spirituous liquors, state is not required
to prove that the liquor was potable, or capable of being used as beverage.
4.  INTOXICATING LIQUORS—STATE NOT REQUIRED TO PROVE DEFENDANT'S
    KNOWLEDGE OF UNLAWFUL PERCENTAGE OF ALCOHOL IN LIQUOR POS-
    SESSED.

   In prosecution for unlawful possession of spirituous liquor, in violation
of *Act Gen. Assem. Feb.* 27, 1917 (29 *Del. Laws, c.* 10, §§ 1, 2), state is not re-
quired to prove that defendant knew or should have known that the liquor
in his possession contained an unlawful percentage of alcohol.

(*June* 17, 1924.)

PENNEWILL, C. J., RICE, HARRINGTON, RICHARDS and
RODNEY, J. J., sitting.

*Clarence A. Southerland*, Deputy Atty.-Gen., for the State.
*Daniel J. Layton* for defendant.

Court in Banc for Sussex County, June Term, 1924, being
Indictment No. 20, February Term, 1924.

Charles H. Shockley was convicted in the Court of General
Sessions for Sussex County of unlawfully possessing intoxicating
liquor. Motion for new trial refused.

Motion for  new trial certified from the Court of General
Sessions of Sussex County to the Court in Banc and heard by the
Judges constituting that court.

The following reasons were assigned in support of the motion
for a new trial:

(1)  "That the verdict was against the evidence."
(2)  "That the verdict was against the weight of the evidence."
(3)  "That there was no evidence produced in said cause sufficient to
justify the jury in bringing in a verdict of guilty."

The fourth and fifth assignments of error were to the charge
of the court, which was quoted in full.

RICHARDS, J., delivering the opinion of the Court in Banc:

[1]  The first, second and third assignments of error are based
upon the ground that there was not sufficient evidence to justify

the jury in finding a verdict of guilty, consequently they will be considered together. The courts of this state have been very slow to grant a new trial for this reason, and we think justly so. Where an issue of fact is clearly presented the judgment of twelve men should not be disturbed by the court, which in this state is never composed of more than three judges, generally two, and at times only one. Where the evidence is overwhelmingly one way we have a different question presented; but was that the condition in the case before us? The state proved by certain federal enforcement officers that they raided the home of the defendant and found in the kitchen a half barrel which contained a certain substance, described as mash, and some liquid which the state chemist testified contained 9 per cent. of alcohol. The defendant denied that the contents of the half barrel belonged to him or that he knew anything about it, admitting, however, that he did pour some water into it at the request of his wife. The defendant's wife testified that the half barrel was being used by her to mix up feed for young pigs, and contained a quantity of meal, water and about one dozen jars of canned fruit which had become unfit for use. She further testified that the defendant had poured water into the mixture at her request.

[2]   The liquid mentioned in the indictment was found in the home of the defendant, where he had the present right and power to control it, which condition is generally held to denote possession. 31 *Cyc.* 924, *B*. * Although he denied that he knew anything about it, he did not deny its existence in his house where he must have passed by it from time to time. Nor did he deny that he poured water into it as testified by his wife, which gave him an opportunity to see it and form some idea of what it was. Considering this testimony and all of the circumstances in connection therewith, we have no doubt that the verdict was justified and decline to grant a new trial for the first three reasons assigned.

[3]   Counsel for the defendant contended at the trial and during his argument before the court for a new trial, that the jurors should have been directed to acquit the defendant because the State failed to prove that the liquid was potable or capable of

* ED. NOTE. See also *Garboctowski v. State*, 2 *W. W. Harr.* (32 *Del.*) 386, 123 *Atl.* 395.

being used as a beverage.   The indictment was found under *chapter* 10 of *volume* 29 of the Laws of Delaware, *section* 2 of which provides as follows:

"It shall be unlawful for any person or persons, corporation, firm, partnership, association or collection of individuals living, residing or staying in those portions of the state of Delaware where the sale of liquors is prohibited by law, to receive directly or indirectly liquors from a common carrier, or other carrier, or to have in his. her, its or their possession, at any one time, more than one quart of spirituous liquors or one dozen pint bottles of malt liquors."

*Section* 1 of the same act provides:

"The words 'spirituous liquors' as used in this act shall be construed to embrace all vinous or *spirituous liquors*, wine, whisky, brandy or other intoxicating drinks, mixtures or preparations of like nature other than malt or brewed drinks;  and 'malt liquors' shall be construed to embrace all malt or brewed drinks, including porter, ale and beer;  and all malt or brewed drinks whether patented or not;  and all liquid mixtures or preparations containing so much as one-half of one per centum of alcohol by volume shall be deemed liquors and shall be embraced in the word 'liquors' as hereinafter used in this act."

The indictment upon which the defendant was tried charges that the defendant "unlawfully did have in his possession, at one time, more than one quart of spirituous liquors, to wit, two hundred quarts of spirituous liquors, to wit, a mixture or compound commonly called mash, the same then and there being a spirituous liquor, or intoxicating drink." Special attention should be given to the fact that the statute under which the indictment in this case was drawn, in prohibiting the possession of spirituous liquors, does not refer to said spirituous liquors as being potable or capable of being used as a beverage;  also to the fact that the indictment itself in charging the defendant with having in possession more than one quart of spirituous liquor does not refer to said spirituous liquor as being potable or capable of being used a s a beverage.

Why, then, should the state be required to prove that the spirituous liquor which it contends was found in the possession of the defendant was potable or capable of being used as a beverage?

It is true that section 2 of *chapter* 239, of *volume* 30 of *Laws of Delaware*, in defining the word "liquor" or the phrase "intoxicating liquors," as used in that act, provides that it shall be construed to include spirituous liquors, and then contains the following provision:

"And all alcoholic liquids containing so much as one-half of one per centum of alcohol by volume, and compounds whether proprietary, patented or not, which are potable or capable of being used as a beverage."

We think, however, that whatever bearing the words "potable or capable of being used as a beverage" may have upon the definition of spirituous liquor, it should be applied to spirituous liquor as referred to in *chapter* 239 *of volume* 30 *of the Laws of this state*. The words "potable or capable of being used as a beverage" not being used in *chapter* 10 *of volume* 29, under which the indictment was found, it was not necessary for the state to prove that the spirituous liquor found in the possession of the defendant was "potable or capable of being used as a beverage." The indictment charges that the defendant "unlawfully did have in his possession more than one quart of spirituous liquor," which is prohibited by *chapter* 10 *of volume* 29 *of the Laws of this State*.

The indictment further alleges that the spirituous liquor consisted of a mixture commonly called mash, yet even though such words might be considered as descriptive of the offense charged and necessary to be proved, we think the record of the trial below shows that the mash found in the possession of the defendant was a spirituous liquor and intoxicating.

In the case of *State v. Bennet*, 3 *Harr*. 565, the defendant was indicted for selling spirituous liquor the proof being that he sold a pint of pepperment cordial. The statute (*Rev. Laws* 1829, *p.* 519) under which the indictment in the case was drawn prohibited the sale of "any wine, rum, brandy, gin, whisky or any spirituous liquor by any measure less than a quart." It was contended that the proof did not sustain the indictment. The court held:

"The act not only particularizes several kinds of liquor, but prohibits the sale of any kind of spirituous liquor under general terms. If the act had stopped at an enumeration of wine, rum, brandy, gin, etc., an indictment for selling any one of these specifications would not be supported by proof of

selling another kind; but the specification being followed by a prohibition of selling any spirituous liquor by a measure less than a quart, it is not necessary, and has not been the practice, to specify in the indictment the kind of spirituous liquor sold."

This, we think, disposes of the contention of counsel for defendant that the indictment is bad for uncertainty.

[4] Counsel for the defendant, during his argument for a new trial, presented with considerable force the additional proposition that the court should have charged the jury that it was necessary for the state to show that the defendant knew, or under the circumstances should have known, that the liquid in his house contained more than one-half of one per centum of alcohol, or in other words, that he had in his possession spirituous liquor.

The question raised by this proposition is an important one to both the defendant and the state, and a number of cases were cited in support of it, including the case of *State v. Willey*, which was heard by the Court of General Sessions, but we are unable to see that the cases referred to are analogous to the one before this court.

In the case of *State v. Willey*, 7 *Boyce* 441, 108 *Atl.* 79, the defendant claimed that one Johnson called at his house and asked permission to leave a satchel until the arrival of the train going to Selbyville, and upon being given permission, left; that he did not know the contents of the satchel until his house was raided by the officers who found said satchel and nine quarts of liquor in it. In charging the jury the court said:

"If the accused received the grip containing the whisky from Johnson, though only, as he claims, for temporary keeping, and did so with knowledge that the grip contained more than one quart of whisky, then he violated the statute."

In the case of *City of Jackson vs. Gordon*, 119 *Miss.* 325, 80 *South.* 785, cited by defendant, Gordon was charged with unlawfully having under his control or in his possession certain liquor. The state showed that he was proprietor of a pressing establishment in which, when raided by the police, was found four bottles of beer in the front part and four bottles under his bed in the back part. The defendant's evidence showed that the liquor had been

left in his shop, that he did not own it and had no knowledge that it was there. The court instructed the jury that they should acquit the defendant unless they believed beyond all reasonable doubt that the liquor in question was in his conscious possession.

In the case of *State v. Cox*, 91 *Or*. 518, 179 *Pac*. 575, also cited by defendant, Cox was a hotel porter who received from a Pullman car porter, to be transported to the hotel with the luggage of guests, a suitcase which was found to contain liquor, and he was charged with wrongful possession of intoxicating liquor. The court held in this case that the question of defendant's knowledge that liquor was in the suitcase should have been left to the jury.

In the case of *Golpi v. State*, 15 *Okl. Cr*. 679, 179 *Pac*. 619, also cited by defendant, Golpi was induced by two men to accompany them to San Francisco, and while carrying certain packages which belonged to them was arrested for unlawfully transporting liquor. The Criminal Court of Appeals of Oklahoma held that he was entitled to avail himself of the defense that he did so innocently.

In these cases and other cases cited by the defendant, the question was whether the defendant could be convicted if he did not know or have reason to know that the intoxicating liquor was in his possession. In none of them was the question similar to the one in the case now before the court, namely, whether the defendant knew or should have known that the liquid in his conscious possession contained more than one-half of one per centum of alcohol.

There are a number of cases in this State bearing on the question of defendant's intent or knowledge in the violation of a criminal statute. In *State v. Costen*, 1 *Penn*. 19, 39 *Atl*. 456, and *State v. Iannucci*, 4 *Penn*. 193, 55 *Atl*. 336, both of which were decided before the statute providing that persons might be licensed to carry a concealed deadly weapon was passed, it was held that a defendant on whose person a deadly weapon is found concealed is *prima facie* guilty of violating the statute against carrying concealed deadly weapon, but he may rebut the presumption by showing that he carried the weapon for a lawful

purpose. In *State v. Ingram*, 3 *Boyce* 439, 84 *Atl.* 1027, decided after the passage of the statute above mentioned, the same being *Chapter* 275 of volume 26 *of the Laws of Delaware*, the court held that any testimony tending to show that the purpose for carrying a deadly weapon was self-defense, was irrelevant and immaterial, in view of the statute. In *State v. Fahey*, 5 *Penn.* 585, 65 *Atl.* 260, and *State v. Salkowski*, 6 *Penn.* 472, 69 *Atl.* 839, it was held that a defendant indicted for selling liquor to a minor may escape conviction by showing in defense that he used all reasonable means necessary under the circumstances to learn whether the minor was under the age of 21 years or not, and that he honestly believed that he was not. In *Brown v. State*, 7 *Penn.* 159, 74 *Atl.* 836, 25 *L. R. A.* (*N. S.*) 661, the defendant was convicted of using a female under 18 years of age for sexual intercourse, and on writ of error the Supreme Court held that representations of the female that she was over 18, the fact that her appearance was such as to warrant the defendant in believing that she was, and his honest belief that she was over such age, was immaterial, because the act charged involved moral turpitude. In *State v. Jackson*, 2 *Boyce* 66, 88 *Atl.* 466, the indictment charged the unlawful cutting of holly trees, and it was held that the criminal act complained of was the sole element of the offense, the intent or knowledge of the defendant being, no ingredient. In *State v. Ford*, 3 *Boyce* 469, 84 *Atl.* 1039, defendant was charged with interfering with the signal lights on the tracks of a railroad contrary to a statute providing that such interference should be deemed malicious. The court held the defendant's purpose, motive or intent to be immaterial, saying:

"A crime usually is composed of two elements, an act and an intent. An act not in itself unlawful rarely amounts to a crime unless it be committed with an unlawful intent. But sometimes an act, because of its nature or of its consequences, is in itself made unlawful, without regard to the motive by which it is inspired or the intent with which it is commited; * * * and when the act is proven to have been done, it is considered by the law to have been done maliciously, and the act alone constitutes the crime. Proof that it was done ignorantly, innocently, or in the spirit of play or mischief rather than of malice, is no defense and can neither be received nor considered."

In *State v. Huber*, 4 *Boyce* 259, 88 *Atl.* 453, the court held that criminal intent is not an element of the offense created by the statute prohibiting the sale of bread by the loaf weighing less than one pound, and used the following language:

"Without undertaking to distinguish this case specifically from the Fahey Case [*supra*], we think the reasons for allowing intent to be made a defense in a liquor case do not exist in the case at bar. It is sometimes impossible for a liquor seller to tell whether the person to whom he sells is 21 years of age or not. While it may be a hardship on the baker, yet it is quite possible for him to tell when he sells a loaf of bread whether it weighs a pound or not. We think the present case is more analogous to the holly case, *State v. Jackson*, [*supra*], than to the Fahey liquor case. * * * The material fact is whether the loaf at the time of the sale weighed a pound or not; and as before stated, while we realize it may be a hardship on the baker, yet we feel that under the law we are bound to hold that the *bona fides* is not an element in the case; and we feel clear that if intent is allowed to be a defense in a case of this kind, the statute would be practically nullified, and the purpose and intent of the Legislature defeated."

These cases clearly show that intent or knowledge has been allowed as a defense only in cases where the charge was the sale of intoxicating liquor to a minor, and carrying concealed a deadly weapon. In the case involving the sale of intoxicating liquor the business engaged in was lawful, but even then a sale to a minor was criminal, no matter how innocent the seller may have been, unless it was shown that the seller used every reasonable effort to learn the age of the minor. The cases involving the carrying of concealed deadly weapons are clearly not in point because a deadly weapon may be carried for a lawful as well as for an unlawful purpose, and the Legislature certainly did not intend that any person should be convicted for carrying a deadly weapon for a lawful purpose. The defendant would be allowed to prove such purpose. It was flatly decided in the case of *Brown v. State*, *supra*, that knowledge or intent was no defense to an act involving moral turpitude, and we know of no authority in this state to the contrary. The case of *State v. Ford*, *supra*, was similar to the Brown Case, the act being accompanied with great danger and resulting peril to the public. The defendant's contention presents the bald question, whether a person indicted for having in his possession more than one quart of spirituous liquor can be convicted unless the State proves that he knew, or should have known,

that the liquid found in his possession contained more than one-half of one per cent. of alcohol by volume. If the State should be required to furnish proof of that character, we think it would tend to nullify the statute or make it uninforceable.

In the case before us the defendant was charged with the unlawful possession of more than one quart of spirituous liquor containing more than one-half of one per cent. of alcohol by volume.

The question before the Court is not like the one decided in the case of selling liquor to minors, and is not unlike, in principle at least, the one decided in the Brown Case and Ford Case. The defendant in the case under consideration was neither engaged in a lawful business nor could his possession of more than one quart of spirituous liquor be lawful if it contained a greater amount of alcohol than one-half of one per cent. Admitting, for the sake of the argument, the defendant could show his lack of knowledge as a defense, it was not shown that he used every reasonable effort to learn whether the liquor contained more alcohol than the law allows and that he honestly believed it did not. But we are of the opinion that in the case now before the court the defendant cannot avail himself of his lack of knowledge as a defense. The case is not unlike the Huber Case and the reasoning in that case is equally applicable to it. The important fact is whether the spirituous liquor charged in the indictment was found in the possession of the defendant, and not whether he knew its alcoholic content; such knowledge not being an element in the case.

The motion for a new trial should, therefore, be refused.