KNECHT, Appellant, vs. KENYON, Executrix, Respondent.

*January 10—February 6, 1923.*

*Explosives: Gasoline in unmarked containers: Knowledge of owner: Liability to person injured by explosion: Contributory negligence.*

1. The answer of the jury to a question of the special verdict, being supported by the evidence, must be deemed a verity in the case.
2. In construing sec. 1421*o*, Stats., punishing the sale or keeping of gasoline in unmarked containers, to determine whether there may be a violation without actual knowledge of the contents of a container other sections of the chapter may be considered, such as par. 5, sec. 1421*e*, where the use of the word "wilfully" requires the violation to have been intentional, and sec. 1421*f*, where the use of the word "knowingly" requires the act to have been with knowledge.
3. Where the owner of a general store where gasoline was sold engaged plaintiff to thaw out, by means of a kerosene blowtorch, a frozen water pipe in a well house where gasoline had been left by a clerk in an unmarked kerosene container, in violation of sec. 1421*o*, Stats., his lack of knowledge of the presence of the gasoline was no defense to plaintiff's action for injuries, notwithstanding any negligence of plaintiff in placing the blow-torch on the floor near the container.
4. The purpose of sec. 1421*o*, Stats., being the protection of the public from improper practices dangerous to life and property, it will be construed as imposing liability without requiring actual knowledge or intention, since to hold otherwise would defeat its purpose.

APPEAL from a judgment of the circuit court for Buffalo county: GEORGE THOMPSON, Circuit Judge. *Reversed.*

The appeal is from a judgment in favor of the defendant dismissing the plaintiff's complaint with costs. The facts will appear in the opinion.

*W. H. Frawley* of Eau Claire, for the appellant.

For the respondent there was a brief by *Gilman & Broadfoot* of Mondovi, and oral argument by *S. G. Gilman.*

DOERFLER, J. E. A. Kenyon, deceased, during the year 1918 and for some time prior thereto operated a general store in the village of Gilmanton, and his home was located about three quarters of a mile from the store. About fifty feet from the residence there was a well hole about five feet in depth and three feet in diameter, curbed up with cement blocks. Connected with the well and extending therefrom underground to the house were certain pipes through which, by an electric motor, the water from the well was pumped into the house. Inclosing this well was a well house about five and one-half feet wide and seven and one-half feet long, extending lengthwise from east to west, on the east end of which there was a door about two feet wide and six feet high. At the time of the explosion herein referred to, said well house contained a pump, a small electric motor, and a gallon kerosene can filled with gasoline.

On March 27, 1918, the plaintiff, who casually met Kenyon in his store, was engaged by him to thaw out the frozen water pipe in the well house by means of a kerosene blow-torch. Plaintiff, who had never been in this well house before, after procuring a ladder to enable him to descend into the pit, placed the lighted torch upon the floor of the well house, and while in the act of descending on the ladder the gasoline contained in the can exploded, causing plaintiff to sustain very severe bodily injuries. No one but the plaintiff was present at the time of the explosion, and

it appears that he did not see the can containing the gasoline nor had he any knowledge that gasoline had been left in the well house; neither was the kerosene can painted with a vermilion red color or marked or stenciled with the word "gasoline," as required by statute. The period of time elapsing between the time that the blow-torch was placed upon the floor and the time of the explosion was about one half of a minute. After the explosion it was ascertained that the exploded can, which had no cover thereon, was lying lengthwise away from the torch a distance of about one and one-half to two feet. It also appears that somewhat over a month prior to this explosion one Brown, a clerk in the employ of said Kenyon, had been requested by him to thaw out the frozen water pipe, and according to his testimony he took from the store, at the request of said Kenyon, the kerosene can and filled it with gasoline, and then left the can in the well house. According to Kenyon's testimony Brown was requested to fill the can with kerosene and use kerosene, and he denied any knowledge that the can had been filled with gasoline or that gasoline was contained in the can located in the well house.

The case was submitted on a special verdict, and the jury found (1) that at the time plaintiff performed his work in the well house there was gasoline in a can in said house; (2) that the defendant did not know that there was gasoline in the can in said well house; (3) that the defendant in the exercise of ordinary care ought to have known that there was gasoline in said can; (4) that the gasoline in said can was the proximate cause of plaintiff's injury; (5) that when plaintiff performed his work in said well house the same was not as free from danger to employees as the nature of the employment reasonably permitted; (6) that the fact that said well house was not as free from danger to employees as the nature of the employment reasonably permitted was a proximate cause of plaintiff's injury;

and (7) that the plaintiff was guilty of a want of ordinary care which proximately contributed to the injury.

The usual motion was thereupon made to change the answers of the jury to questions decided adversely to plaintiff and for judgment in his favor, and, in the event of the denial of such motion, for judgment in plaintiff's favor notwithstanding the verdict, all of which motions were denied by the court, and the judgment as aforesaid was thereupon rendered in defendant's favor dismissing the complaint with costs.

Plaintiff's counsel, among other things, contends that under the evidence and the special verdict of the jury plaintiff was entitled to judgment upon the special verdict, claiming that the presence of gasoline in the kerosene can at and prior to the explosion constituted a violation of a criminal statute known as sec. 1421o, Stats. 1917, and that the jury's finding of contributory negligence did not defeat plaintiff's right of recovery.

Sec. 1421o, Stats., reads as follows:

*"Gasoline, etc.; containers; paint; stenciling; penalty.* Section 1421o. Every person dealing at retail or wholesale in gasoline, benzine, or naphtha, and other like products of petroleum in this state, shall deliver the same to the purchaser only in barrels, casks, jugs, packages, or cans, painted vermilion red and having the word 'gasoline,' 'benzine,' and the name of such other like products of petroleum, plainly stenciled in English thereon. No such dealer shall deliver kerosene in a barrel, cask, jug, package, or can painted or stenciled as hereinbefore provided. Every person purchasing gasoline, benzine, naphtha, or other like products of petroleum for use or sale shall procure and keep the same only in barrels, casks, jugs, packages, or cans painted and stenciled as hereinbefore provided. No person keeping for use or using kerosene shall put or keep the same in any barrel, cask, jug, package, or can painted or stenciled as hereinbefore provided. Provided, however, that in case of gasoline, benzine, and naphtha, or other like product of petroleum being sold in bottles, cans, or packages, or any

product that contains gasoline, benzine, or naphtha, or other like products of which petroleum is a constituent part thereof, of not more than one quart for cleaning and similar purposes, it shall be deemed sufficient if the contents of such bottles, cans, or packages are so designated by a label securely pasted or attached thereto with the words 'gasoline,' 'benzine,' or 'naphtha,' 'unsafe when exposed to heat or fire,' printed in bright red ink in letters not less than one-fourth inch in size. Any person violating any of the provisions of this section shall be punished by a fine of not less than five nor more than fifty dollars, or by imprisonment in the county jail not to exceed three months, or by both such fine and imprisonment. It shall be the duty of the state supervisor of inspectors and his deputies to enforce the provisions of sections 1421c to 1421p, inclusive."

The answer of the jury to the first question of the special verdict, being supported by the evidence, must be deemed a verity in the case.

The section above referred to is a part of ch. 57a, Stats., entitled "Inspection of illuminating oils," and contains numerous provisions not only for the inspection and testing of gasoline, naphtha, benzine, kerosene oil, and other similar products, but which also regulate the manufacture and sale thereof and prohibit the sale to a purchaser or the use thereof except upon compliance with the express provisions of such statutes. In the various sections in this chapter different expressions are used defining who shall be liable for a violation. For instance, in paragraph 5 of sec. 1421e it is said: "Any person who shall *wilfully* adulterate . . . shall be punished . . ." In paragraph 6, "Any person who shall falsely stamp, seal, brand or mark any cask, . . ." Sec. 1421f: "No person shall *knowingly* sell or offer for sale, . . ." Sec. 1421o contains the provision: "Every person purchasing gasoline, benzine, . . . for use or sale shall procure and keep the same only in barrels, . . ."

In construing sec. 1421o it is proper to take into consideration the various other sections contained in said chapter

for the purpose of ascertaining the legislative intent. No doubt can be entertained that where the word "wilfully" is used, in order to create a liability under the statute it must be shown that the act committed was wilful or intentional; and that where the term "knowingly" is used, no liability follows by force of the statute unless knowledge of the act complained of is brought home to the violator.

Defendant's counsel contend that in order to hold the defendant liable for a violation of the statute, such as the one involved in the instant case, personal knowledge of the presence of the prohibited liquid must be shown; and the jury having found that the defendant had no knowledge of the existence of this can of gasoline in the well house, he cannot be held liable. And it is further contended that defendant cannot be held guilty of gross negligence so as to relieve the plaintiff of contributory negligence, because this court has held that gross negligence involves constructive intent, and that such constructive intent implies knowledge.

In *Pinoza v. Northern C. Co.* 152 Wis. 473, 477, 140 N. W. 84, in construing sec. 1728a, Stats. (Laws 1909, ch. 338), which prohibited the employment of children under the age of sixteen years in connection with dangerous machinery, etc., and which also made a violation of such section a misdemeanor punishable by a fine or imprisonment, it was held:

"Where the violation of a statute designed to protect persons against bodily injuries is made a criminal offense, such a violation should be classed with gross negligence, and for injuries resulting therefrom the guilty person should be held liable in a civil action, regardless of contributory negligence on the part of the person injured." (Syllabus, par. 1.)

It will be noted that in the *Pinoza Case* the court did not denominate the violation of the prohibited act as gross negligence, but that it classed the violation with that of

gross negligence, and held that contributory negligence was not a defense.

At the present time the knowledge of the danger connected with the handling or use of gasoline is quite general. According to statistics, one out of every eight of the inhabitants of this state is the owner of a gas automobile, and but few families do not possess such a vehicle. Gasoline is also quite generally used in generating power, not only in industrial establishments but in business houses and on the farm. It is also used for illuminating purposes. Realizing the great danger to human life and to property that the improper handling and use of these liquids entails, and the general uses to which they are put, the legislature, wisely recognizing the necessity for certain rules, regulations, and protective features in the interests of the public, has seen fit to enact the statutes above referred to.

"As a general rule, where an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, even when not in terms required. The legislature, however, may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer, and if such legislative intention appears the courts must give it effect, although the intent of the doer may have been innocent. This rule has been generally although not quite universally applied in the enforcement of statutes passed in aid of the police power of the state, where the word 'knowingly' or other apt words are not employed to indicate that knowledge is an essential element of the crime charged. . . . Whether or not in a given case a statute is to be so construed is to be determined by the court by considering the subject matter of the prohibition as well as the language of the statute, and thus ascertaining the intention of the legislature." 16 Corp. Jur. pp. 76, 77, § 42.

In *People v. Roby,* 52 Mich. 577, 579, 18 N. W. 365, where the owner of a saloon was convicted of violating the

law relative to keeping open his place of business on Sunday, upon a sale made by his clerk without his consent the court, by Cooley, C. J., observed:

"Many statutes which are in the nature of police regulations as this is, impose criminal penalties irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible."

The same rule has been laid down with respect to the sale of adulterated food. 2 Corp. Jur. p. 7, § 15. And the reason for that rule, as stated in the last named authority, is:

"The statutes have for their object the protection of the public against the hurtful consequences of adulterated food and drugs, and those consequences are in no degree increased by the vendor's knowledge, or diminished by his ignorance, of the adulteration of the articles which he offers for sale." See, also, *Reismier v. State,* 148 Wis. 593, 135 N. W. 153; *Scott v. State,* 171 Wis. 487, 177 N. W. 615.

Manifestly, if the owner of a large retail store, employing numerous clerks, engaged in selling gasoline and other similar products, was exempted by a construction of the statute involved because of his lack of knowledge or of a lack of intention, and where such clerks failed to comply with the provisions of the statutes, the statute itself would be emasculated and the beneficial results designed to be attained would be frustrated. The statute itself must be construed in connection with the general object and purpose which it is apparent that the legislature desired to effect. It is not a statute like secs. 2394—48 and 2394—49, as they existed at the time of the decision in *Besnys v. Herman Zohrlaut L. Co.* 157 Wis. 203, 147 N. W. 37, which was held to be merely a coercive statute with a penalty attached in the nature of a forfeiture, but is a purely criminal statute providing a fine or imprisonment. Such statute, therefore, must be classed with the statute referred to in the *Pinoza*

*Case,. supra,* and a compliance with such statute requires the exercise of the necessary amount of diligence on the part of the owner to prevent a violation of its provisions.

Under the authorities above cited the statutes are directed against improper and dangerous practices, and the object aimed at could not be accomplished without a construction of the statute as above indicated.

We therefore hold as a matter of law, under the special verdict of the jury, that the judgment of the lower court must be reversed, and that the plaintiff is entitled to judgment for the damages found by the jury, with interest thereon from the date of the verdict, together with costs.

*By the Court.*—Judgment reversed, and the cause remanded with directions to enter judgment in plaintiff's favor in accordance with this opinion.