(January 28, 1905.)

## STATE v. ADAMS.

[79 Pac. 398.]

BOUNTY LAW—FRAUDULENT CLAIM AGAINST COUNTY—PROOF—CONSUMMATION OF CRIME.

    1. It is a well-recognized principle of criminal jurisprudence that proof of certain facts may lead irresistibly to the presumption that an act of which there is no direct proof was committed.

    2. Where it is shown that certain means were adopted to attain a certain end, and the end in itself was attained, a completion of the act will be presumed.

3. Under the provisions of section 6385, Revised Statutes, it is not required that a fraudulent bill against a county be allowed or paid before a conviction can be had, and it is no defense that the ears of the animals for which bounty was claimed were spurious and easily detected by the board of commissioners. In such case it does not require that the ears be genuine.

4. The provisions of section 1760b, Revised Statutes, have been superseded ·by act approved March 11, 1901, as to the animals named in the latter act. ·

5. Under the provisions of an act approved March 11, 1901 (Sixth Sess. Laws, 205), one may swear to his claim against the county for bounty before anyone in the county authorized to administer oaths, and on the presentation thereof with the ears, and whatever part òf the pelt that the board of county commissioners may require, if such claim is valid, the board is authorized to allow it.

6. The fourth section of said act approved March 11th, *supra,* in regard to the making of false affidavits, was·not intended to, and does not, supersede the provisions of said section 6385, but is a separate and distinct crime from the one referred to in that section.

7. Under the provisions of section 6385, when a false or fraudulent claim, with intent to defraud the county, is presented to the board for the purpose of procuring its allowance, the crime specified in said section is consummated.

(Syllabus by the court.)

APPEAL from the district court of Fremont County. Honorable J. M. Stevens, Judge.

Defendant was convicted of presenting a false and fraudulent claim against Fremont county, and was found guilty and sentenced to a term of one year in the state penitentiary. Judgment affirmed.

The facts are stated in the opinion.

Hamer & McConnell and Chalmers & Jones, for Appellant.

The only proof against the defendant is that he made the affidavit of a claim under the bounty law, on June 12, 1902, at Market Lake,· not a word showing or tending to show that he directly or indirectly, in person or by mail or otherwise, presented or caused to be presented, or participated in presenting, said alleged claim to any board or officer whatever, and it must

be borne in mind that the gist of this action is the presentation of a false and fraudulent claim to a public board or officer. The rules relating to false pretenses and cheats are applicable here. The presentation of false accounts is false pretenses. (7 Am. & Eng. Ency. of Law, p. 754.) To authorize a conviction it must be shown that the prisoner knew the representations actually made to be false and that he intended to defraud. (*Sharp v. State,* 53 N. J. L. 511, 21 Atl. 1026; *People v. Wakely,* 62 Mich. 297, 28 N. W. 871; 6 Lawson's Criminal Defenses, pp. 1033-1035; citing *Bracey v. State,* 64 Miss. 26, 8 South. 165.) The representation must not be obviously false, else no recovery or conviction can be had. (2 Wharton's Criminal Law, sec. 2129; *Shaffer v. State,* 82 Ind. 221; *Miller v. State,* 73 Ind. 88; *State v. Orvis,* 13 Ind. 569; *Johnson v. State,* 11 Ind. 481; *State v. Magee,* 11 Ind. 154; *Commonwealth v. Grady,* 13 Bush, 285, 2 Am. Cr. Rep. 105, 26 Am. Rep. 192; *People v. Williams,* 4 Hill, 9, 40 Am. Dec. 258; *People v. Stetson,* 4 Barb. 156; *Dord v. People,* 9 Barb. 674; *Scott v. People,* 62 Barb. 73; *People v. Crissie,* 4 Denio, 528; *Long v. Warren,* 68 N. Y. 432; *People v. Haynes,* 14 Wend. 546, 28 Am. Dec. 530; *State v. Simpson,* 2 Hawks (9 N. C.), 460; *Commonwealth v. Hutchens,* 1 Pa. L. J. Rep. 302, 2 Pars. Cas. (Pa.) 309; *Commonwealth v. Toolson,* 2 Pars. Cas. (Pa.) 326; *State v. Stroll,* 1 Rich. (S. C.) 244; *Delaney v. State,* 7 Baxt. 28; *Buckalew v. State,* 11 Tex. App. 352; *Commonwealth v. Houghey,* 3 Met. (Ky.) 223; *State v. Young,* 76 N. C. 258.) In cases of this character, the statute, being highly penal, is to be strictly construed. (Bishop on Statutory Crimes, 2d ed., secs. 193, note 3, 199; 4 Am. & Eng. Ency. of Law, pp. 643, and citations.)

John A. Bagley, Attorney General, for the State.

The defendant is prosecuted for presenting a false claim for payment and not for obtaining money under false pretenses. (Rev. Stats., sec. 6385; *Hauck v. State,* 45 Ohio St. 439, 14 N. E. 92.) Presenting false claims to public officers is an offense of a kindred nature to false pretenses and cheats, but is an entirely separate and distinct offense. (12 Am. & Eng. Ency. of Law, 853.) Section 1760b of the Revised Statutes is a gen-

eral law in regard to the presentation of claims for bounties, but this claim was presented for the bounty offered on coyotes by an act found in Session Laws of 1901, page 205. While the statute involved in this case has nothing to do with the obtaining of money or property, but the gist of the crime, as counsel for appellant admit, is the *presentation* of the bill. Even the first authority cited by appellant bears us out in this contention. (7 Am. & Eng. Ency. of Law, p. 754; *Roberts v. People,* 9 Colo. 458, 13 Pac. 630; Utah Rev. Stats., secs. 4083, 4397; Cal. Pen. Code, secs. 72, 532.) As to the argument of counsel for appellant that if any offense has been committed by the defendant, it is a misdemeanor and not a felony, we reply that where a criminal act constitutes more than one offense, the state and not the defendant shall elect for which offense the information shall be filed. (Bishop on Criminal Law, 8th ed., secs. 791, 792; *United States v. Grundy,* 3 Cranch, 338, 2 L. ed. 460; *Lohman v. People,* 1 N. Y. 379, 49 Am. Dec. 340; *People v. Mather,* 4 Wend. 229, 21 Am. Dec. 122.)

SULLIVAN, J.—This case was before this court at its November, 1903, term, and was remanded for a new trial. (9 Idaho, 582, 75 Pac. 258.) On a retrial the defendant was convicted of presenting a false and fraudulent claim for $237 as a bounty on one hundred and fifty-eight coyote scalps, which scalps were found to be spurious or manufactured. The prosecution was under the provisions of section 6385 of the Revised Statutes, which section is as follows: "Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, town, city, ward or village board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher or writing is guilty of a felony." An act was passed at the sixth legislative session entitled "An act providing for the killing of coyotes, lynx and wildcats," and providing a fund for the payment of the same (Sess. Laws 1901, p. 205), by which act a bounty of $1.50 was offered for each and every coyote killed, and the defendant is charged with the crime of felony committed as follows: "That said R. D. R. Adams, on or about the thirteenth day of June,

A. D. 1902, at the county of Fremont, in the state of Idaho, did willfully, unlawfully and feloniously with intent to defraud Fremont county, state of Idaho, present for allowance to the board of county commissioners of said Fremont county, state of Idaho, who were authorized to allow the same if genuine, a false and fraudulent claim, a statement in writing duly verified by him, on the bounty fund of said Fremont county, state of Idaho, for the sum of two hundred and thirty-seven dollars purporting to be for one hundred and fifty-eight coyote scalps, contrary to the form, force and effect of the statute in such case made and provided and against the power and force and dignity of the state of Idaho." The defendant was convicted and sentenced to a term of one year in the state penitentiary. The appeal is from the judgment and an order denying a new trial.

The first question presented by the brief of counsel for appellant is the insufficiency of the evidence to support the verdict. The evidence shows that the defendant appeared before his brother in law, who was justice of the peace, on the twelfth day of June, 1902, with a box claimed to contain the ears of one hundred and fifty-eight coyotes, and defendant's written claim against the county for the sum of $237 was prepared by said justice of the peace, and subscribed and sworn to by the defendant. The justice then gave to him said bill or claim and the box of ears and told him to send them to the clerk of the court of Fremont county. The defendant then left with the box and bill, and some person presented a box to the postmaster at Market Lake and requested him to register the same as coming from J. W. Ayers, Market Lake, to A. M. Carter, St. Anthony, the said Carter being clerk of the court of said Fremont county. It also appears that said bill and a box of ears were received by said Carter as clerk of said court and ex-officio auditor, at St. Anthony, on the thirteenth day of June, 1902; that he received said bill in a letter that he received which showed that it was from Adams and in his favor, for bounty on one hundred and fifty-eight coyotes. It further shows that said ears were manufactured and spurious. It is further shown that a man by name of Short and the defendant were operating together in the coyote business, and that said Short manufactured coyote

ears; that said defendant took from said Short a cigar-box full of said spurious ears. It appears that said defendant requested a man by the name of Price to turn into the county some ears for him and he refused to do it, and told the defendant that they were spurious ears, and defendant thereupon assured him that there was no danger, that he had turned in several batches of them and had come out all right and had not got caught, and that he would stand the expense if said Price got caught. The defendant had a conversation with the deputy sheriff on the day that he was arrested for said crime, and said that inasmuch as he had received no money for the scalps he had sent up, he wanted to know if the matter could not be fixed up by his relinquishing any claim for the money from the county, and that if it could be fixed up that way he would relinquish any claim and have the matter dropped. He asked what the penalty would be if he plead guilty to the charge. After a careful examination of the evidence, we are fully satisfied that the verdict is amply supported by it; that it shows beyond a reasonable doubt that the defendant presented for allowance to the board of county commissioners of Fremont county the claim referred to and set forth in the information with intent to defraud the county.

It is contended that the only proof against the defendant is that he made the affidavit of the claim under the bounty law on June 12, 1902, at Market Lake, and that there is not a word showing or tending to show that he, directly or indirectly, in person or by mail, presented or caused to be presented, or participated in presenting, such claim to any board or officer whatever. That contention is not sustained by the evidence, as the evidence shows that the defendant appeared before a justice of the peace and requested the justice to prepare a claim for him for bounty on one hundred and fifty-eight coyotes, and also at the same time produced a cigar-box containing one hundred and fifty-eight scalps or ears. The justice thereupon prepared the claim and affidavit, and the defendant then and there signed and swore to the claim, and the claim with the box of ears was returned to the defendant by said justice and the justice thereupon told him to send them to the clerk of the court in Fremont

county.   The defendant thereupon took said claim and box of ears, and he, or someone else presented the same to the postmaster at Market Lake, and requested him to register the same to the clerk of the court at St. Anthony, which he did, and it appears that said claim, or bill, and box of ears, were received by said clerk on the thirteenth day of June, 1902; that said bill was received in a letter to said clerk, which showed that it was from Adams, and in his favor, for bounty on one hundred and fifty-eight coyotes.   While the postmaster testified that he could not recollect who presented the box for registration, it is shown that on the twelfth day of June, the defendant swore to the affidavit and took the box of ears from the justice, and that on that day said claim and the box of ears were sent from Market Lake to said clerk.   The evidence on that point is amply sufficient to show that the claim was presented to said board by the defendant.   It is a well-recognized principle in criminal jurisprudence that proof of certain facts may lead irresistibly to the presumption that another act, of which there is no direct proof, was committed or done.   It is presumed that regular and ordinary means are adopted for a given end, so where means calculated to attain a certain end appear to have been adopted and the end itself attained, a completion of the act will be presumed.   (*Roberts v. People,* 9 Colo. 458, 13 Pac. 630; 1 Phillips on Evidence, *599-610.)

In the case before us, the end in view, to wit, the presenting of the claim, was attained.   The means adopted involved several steps, all of which were established by direct proof, except that it was not proven who presented the box of ears to the postmaster in order to have it registered and sent to the clerk of the board and mailed the letter to the clerk of the court. However, the admissions of the defendant to the deputy sheriff as above set forth shows beyond a reasonable doubt that he was instrumental in having said claim presented for allowance with intent to defraud the county.   It is urged that the ears admitted in evidence were spurious; that the fraud was detected by the county commissioners, and that the bill was not allowed and was never paid, and for that reason the defendant is not guilty.   It is not requisite under the provisions of section 6385 that the

.fraudulent bill be allowed or paid before a conviction can be had. It is there provided that every person "who with intent to defraud, presents for allowance . . . . any false or fraudulent claim, bill, account, voucher or writing, is guilty of a felony." It is the presenting of a false or fraudulent claim with intent to defraud that constitutes the crime. The offense is consummated when that is done. In *Hauck v. State,* 45 Ohio St. 439, 14 N. E. 92, the court said: "When the false and fraudulent claim was presented by him to this board for the purpose of procuring its allowance, the crime for which he was indicted was consummated." The presenting of a false or fraudulent claim to a board of county commissioners for its allowance may be of a kindred nature to false pretenses and cheats, but it is an entirely separate and distinct offense. It is shown that the bill or claim was fair and regular on its face; but it is contended that as the ears were spurious, and were easily detected by the board of commissioners, that for that reason the defendant was not guilty. We are unable to consent to that contention as the presenting of a false claim with intent to defraud is the gist of the offense. The easy detection of the spurious ears will not purge the act of crime.

It is contended under the provisions of section 1760b, Revised Statutes, that the county commissioners were not authorized to allow claims against the bounty fund unless such claims were accompanied with the scalps of the animals, and as only the ears and not the scalps accompanied this claim, the defendant was not guilty for that reason. The provisions of that section are no longer applicable in case of claims and demands for bounty on the wild animals enumerated and designated in an act of March 11, 1901, entitled "An act providing for a bounty for the killing of coyotes, lynx and wildcats, and providing a fund for the payment of the same." (See Sess. Laws 1901, p. 205.) The provisions of section 1760b have been superseded by the provisions of sections 2 and 3 of the act above cited.

It is contended that it was not contemplated or intended by the legislature in the enactment of the law approved March 11, 1901, *supra,* that false and fraudulent claims against the scalp fund were crimes under the provisions of section 6385, for the

reason that section 4 of said act provides for the punishment of persons filing false affidavits, under the provisions of said act. We cannot agree with that contention, as the latter act makes it a crime to make a false affidavit to a claim against the bounty fund, while the provisions of section 6385 make it a felony for anyone to present with intent to defraud, a false or fraudulent claim against the county; and in the case at bar, a false and fraudulent claim was presented, and this prosecution is for that crime and not for making a false affidavit. The state might have prosecuted the defendant for making a false affidavit, but it did not do so, but prosecuted him for presenting a false and fraudulent claim against the county.

We find no errors in the record, and the judgment is therefore affirmed.

Stockslager, C. J., and Ailshie, J., concur.