(October 24, 1922.)

STATE, Respondent, v. JERRY WILLIAMS, Appellant.

[209 Pac. 1068.]

CRIMINAL LAW—INSTRUCTIONS—DYING DECLARATION—ADMISSIBILITY.

1. It is not error to refuse to give requested instructions upon an abstract principle of law, not based upon anything contained in the record.

2. A dying declaration as to the cause of death made by one consciously about to die is admissible in evidence without preliminary proof that the declarant believed in a future state of rewards and punishments.

APPEAL from the District Court of the Fifth Judicial District for Bannock County. Hon. O. R. Baum, Judge.

Appellant convicted of voluntary manslaughter. *Affirmed.*

Anderson & Jeffery, for Appellant.

In defendant's requested instruction No. 2, which was modified and given by the court, the court omitted the following: "The jury may consider any inconsistency of the dying declaration, if any there be." (*State v. Hendricks,* 172 Mo. 654. 73 S. W. 194; 2 Brickwood, Sackett's Instructions, sec. 3098; 1 Wharton, Crim. Evidence, 303.)

The court should have excluded the alleged dying declaration of Alfred Sasseli for the reason that there is no sufficient showing that the defendant had that belief of immediate and impending death that is contemplated and required by law. (*State v. Knoll,* 69 Kan. 767, 77 Pac.

Publisher's Note.

2. Admission in evidence of dying declarations of person deceased, see notes in 86 Am. St. 637; 56 L. R. A. 353.

Effect of declarant's unbelief in God and a future state of reward or punishment on admission of dying declarations in evidence, see notes in 16 Ann. Cas. 148; 16 A. L. R. 415.

580; *Fannie v. State,* 101 Miss. 378, 58 So. 2; *Bell v. State,* 72 Miss. 507, 17 So. 232; *Craven v. State,* 49 Tex. Crim. 78, 90 S. W. 311; *Biggs v. Commonwealth,* 150 Ky. 675, 150 S. W. 806.)

The court should have excluded from the purported dying declaration all matters except those dealing directly with actual homicide. (*State v. McKnight,* 119 Iowa, 79, 93 N. W. 63; *State v. O'Shea,* 60 Kan. 772, 57 Pac. 970; *State v. Parker,* 172 Mo. 191, 72 S. W. 650; *Baker v. Commonwealth,* 106 Ky. 212, 50 S. W. 24; *People v. Smith,* 172 N. Y. 210, 64 N. E. 814; *State v. Moody,* 18 Wash. 165, 51 Pac. 356; *Foley v. Wyoming,* 11 Wyo. 764, 72 Pac. 627.)

Roy L. Black, Attorney General, and James L. Boone, Assistant, for Respondent.

The giving of instructions, whether correct or not, which are abstract and not authorized by the evidence, will not constitute a ground for reversal. (7 C. J., sec. 3690, p. 342; *State v. Sims,* 35 Ida. 505, 206 Pac. 1045.)

The belief or unbelief in a future life, its rewards and punishments, affects the credibility of a dying declaration rather than its competency. (*People v. Chin Mook Low,* 51 Cal. 797; *Nesbit v. State,* 43 Ga. 238; *State v. Elliott,* 45 Iowa, 486; *Hill v. State,* 64 Miss. 431, 1 So. 494; *Goodall v. State,* 1 Or. 333, 80 Am. Dec. 390; *Gambrall v. State,* 92 Miss. 728, 131 Am. St. 549, 16 Ann. Cas. 147, 46 So. 138, 17 L. R. A., N. S., 291; *State v. Rozell* (Mo.), 225 S. W. 931; *People v. Lim Foon,* 29 Cal. App. 270, 155 Pac. 477; 2 Wigmore on Evidence, sec. 1446; *State v. Loper,* 159 Cal. 6, 112 Pac. 720; *State v. Hood,* 63 W. Va. 182, 59 S. E. 971, 15 L. R. A., N. S., 448; *State v. Yee Gueng,* 57 Or. 509, 112 Pac. 424.)

RICE, C. J.—This is an appeal from a judgment of conviction of the crime of voluntary manslaughter. Appellant specifies as error the action of the court in refusing to give certain requested instructions. Except as to those which we

shall hereafter consider, the substance of the requested instructions was given by the court.

The fifth requested instruction is as follows: "The fact that the defendant was armed, and may be guilty of a violation of the law against carrying concealed weapons would not deprive the defendant of the right of self defense, or the right to defend himself when assailed by another."

The court fully instructed the jury upon the law of self-defense. We find in the record no intimation, either by the court or upon the part of counsel, that the mere fact that appellant was armed would deprive him in any respect of his right of self-defense. It is not error to refuse to give a requested instruction upon an abstract principle of law, when there is no evidence in the record to which it applies.

The victim of the homicide made a dying declaration which was admitted in evidence. We think there is no doubt that there was sufficient showing that the declaration was made *in extremis* and with knowledge of declarant's impending dissolution. It is contended that the declaration should have been excluded because it was not shown that the defendant believed in a future state of rewards and punishments.

In the cases of *Rex v. Pike,* 3 C. & P. 598, 14 Eng. Com. Law Rep. 735, and *Reg. v. Perkins,* 9 C. & P. 395, 38 Eng. Com. Law Rep. 236, it was held that a belief of declarant in a future state of rewards and punishments is necessary in order to render the declaration competent. In the case of *Donnelly v. State,* 26 N. J. L. 601, decided by the court of errors and appeals, it was held that since the declarant is considered in the relationship of a witness, it follows that whatever would disqualify a witness would render evidence of a dying declaration incompetent. The court said: "Persons deficient in understanding, and those who are insensible of the obligations of an oath, from defect of religious sentiment and belief, in which class are included such as have become infamous by being convicted of heinous crimes, are incompetent to be sworn as witnesses, and

whether a person falls within the exclusion or not, is purely a question of law for the court.''

It was held in that case that it did not appear that the declarant was incompetent as a witness on account of lack of religious belief, and no such presumption would be indulged in order to exclude the declaration.

In the case of *Tracy v. People*, 97 Ill. 101, it was held that it was error to exclude evidence offered by the accused to the effect that the deceased indulged in profane language at the time he was making his dying declaration or afterwards. The court in that case was considering the admissibility and not the credibility of the declaration. The theory of the court is shown by the following quotation: ''Assuming that the deceased was a believer in a future state of rewards and punishments, and such is the presumption where nothing appears to the contrary, the use of profane language immediately preceding the statement is hardly to be reconciled with the assumption that he was at the time of sound mind and impressed with a sense of almost immediate death.''

The matter is discussed in Wigmore on Evidence, vol. 2, sec. 1443.

In the case at bar there was no testimony offered as to the religious convictions of the deceased.

A dying declaration is hearsay. It is admitted because of the exigencies of the situation. Clearly the declaration should be excluded if the declarant would have been incompetent to act as a witness. But under C. S., sec. 7935, no person is disqualified as a witness on account of his opinions on matters of religious belief.

It should be excluded as hearsay also, unless sufficient guaranties of its trustworthiness bring it within the exceptions to the hearsay rule. It is generally considered that the fact that the declaration is made by one actually *in articulo mortis,* and is made with a consciousness of impending dissolution, is of itself sufficient guarantee of the truthfulness of the statement to render it admissible, and we believe this rule to be sound. Very little testimony is

received in a court which has the attribute of absolute certainty. A witness may commit perjury, or an honest witness may be inaccurate, both in observation and statement, or be defective in memory. Almost all cases, criminal as well as civil, are decided upon the weight of probabilities. It is commonly conceded that one resting under a conviction of immediate death will try to tell the truth. Whether this effect is produced by spiritual conviction or physical repulsion, as suggested by Wigmore, or for some other reason, might be difficult to determine. But the fact that the statement of one consciously about to die carries conviction, without an analysis of the reason why it does so, is sufficient guarantee of trustworthiness to render the dying declaration admissible in evidence. (See *State v. Hood*, 63 W. Va. 182, 129 Am. St. 964, 59 S. E. 971, 15 L. R. A., N. S., 448; *State v. Elliott*, 45 Iowa, 486; *State v. Rozell* (Mo. App.), 225 S. W. 931, 16 A. L. R. 400, and note; *Gambrell v. State*, 92 Miss. 728, 131 Am. St. 549, 16 Ann. Cas. 147, 46 So. 138, 17 L. R. A., N. S., 291; *Hill v. State*, 64 Miss. 431, 1 So. 494.)

The appellant also complains because the court modified a requested instruction as to the weight to be given to the dying declaration by striking out the words, "and the jury may consider any inconsistency of the dying declaration if any there be." The court did not commit error in this respect. There were no inconsistencies in the declaration in this case. This instruction is usually requested where it is shown that the deceased at other times or places has made statements inconsistent with his dying declaration. There is a conflict in authority as to whether a dying declaration may be impeached in this manner. This question is not involved in the case at bar.

The judgment will be affirmed.

Budge, McCarthy, Dunn and Lee, JJ., concur.