STATE OF IOWA, Appellee, v. LESTER D. DUNN, Appellant.

MOTOR VEHICLES: Criminal Offenses—Alteration of Engine Number
1 —Possession—Knowledge. The possession of a motor vehicle the
engine number of which has been altered is an offense, irrespective
of the knowledge of the person possessing it.

CRIMINAL LAW: Evidence—Confessions (?) Or Contradictory State-
2 ments (?) Evidence that an accused made *contradictory statements*
as to how and of whom he obtained certain property imposes no
obligation on the court to instruct on the subject of *confessions of
guilt.* (See Book of Anno., Vol. 1, Sec. 13903.)

CRIMINAL LAW: Evidence—Confessions—Burden of Proof. Principle
3 reaffirmed that, where a confession of guilt appears to be free and
voluntary, the burden is on the accused to establish the contrary.

CRIMINAL LAW: Trial—Instructions—Unpleaded Defense. Reversible
4 error results from submitting to the jury and requiring it to make a
finding on a possible defense not presented by the defendant. So
held as to the possession of an official certificate explanatory of the
alteration of a motor vehicle engine number. (See Book of Anno.,
Vol. 1, Sec. 11493, Anno. 473 *et seq.*)

CRIMINAL LAW: Evidence—Good Character—Effect. Reversible
5 error results from instructing that "evidence of good character is a
circumstance which may be shown for the purpose of rebutting the
presumption of guilt. arising from circumstantial evidence." (See
Book of Anno., Vol. 1, Sec. 13897, Anno. 208 *et seq.*)

Headnote 1: 16 C. J. p. 76; 28 Cyc. p. 49. Headnote 2: 16 C. J. p.
1002. Headnote 3: 16 C. J. p. 733. Headnote 4: 16 C. J. p. 1042; 17
C. J. pp. 338, 342. Headnote 5: 16 C. J. p. 981.

Headnote 3: 18 L. R. A. (N.S.) 783; 1 R. C. L. 580.

*Appeal from Marshall District Court.*—JAMES W. WILLETT,
Judge.

JANUARY 11, 1927.

The defendant was charged by indictment with a violation
of Section 5080 of the Code of 1924. Upon a trial, he was found
guilty, and from a judgment imposing a fine of $500 he appeals.
—*Reversed and remanded.*

*F. E. Northup,* for appellant.

*Ben J. Gibson,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *Roy L. Pell,* County Attorney, for appellee.

VERMILION, J.—The appellant was charged by indictment with a violation of Section 5080 of the Code of 1924. That section, so far as here material, is as follows:

"No person shall: * * * Possess a motor vehicle the serial or engine number of which is defaced, altered, or tampered with."

Section 5081 provides punishment by imprisonment or the imposition of a fine for a violation of the preceding section.

I.  By requested instructions, which were refused, and by exceptions to the instructions given to the jury, the question is presented whether knowledge on the part of one in possession of a motor vehicle of the fact that the engine number thereof has been altered, defaced, or tampered with is an essential element of the crime defined by the statute.

It is quite universally recognized at this day that the legislature may forbid the doing of an act and make its commission a crime without regard to the intent or knowledge of the doer.

1. MOTOR VEHI-CLES: criminal offenses: alteration of engine number: possession: knowledge. Whether a criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined as a matter of construction from the language of the act, in connection with its manifest purpose and design. *Shevlin-Carpenter Co. v. Minnesota,* 218 U. S. 57 (54 L. Ed. 930); *United States v. Balint,* 258 U. S. 250 (66 L. Ed. 604); *Brown v. State,* 7 Penn. (Del.) 159 (74 Atl. 836, 25 L. R. A. [N. S.] 661); *Commonwealth v. Mixer,* 207 Mass. 141 (93 N. E. 249, 31 L. R. A. [N. S.] 467); *People v. West,* 106 N. Y. 293 (12 N. E. 610); *State v. Hennessy,* 114 Wash. 351 (195 Pac. 211); *Knecht v. Kenyon,* 179 Wis. 523 (192 N. W. 82); *Wess v. South Dakota P. & S. Co.,* 43 S. D. 467 (180 N. W. 510); *State v. Lindsey,* 26 N. M. 526 (194 Pac. 877); *State v. Laundy,* 103 Ore. 443 (204 Pac. 958); *State v. Sterrett,* 35 Ida. 580 (207 Pac. 1071); *State v. Johnson,* 115 Mo. 480 (22 S. W. 463); *Landen v. United States,* 299 Fed. 75. See, also, 16 Corpus Juris 76 and 8 Ruling Case Law 62.

We have repeatedly recognized and applied the primary doctrine. *Jamison v. Burton,* 43 Iowa 282; *State v. Newton,* 44 Iowa 45; *State v. Probasco,* 62 Iowa 400; *State v. Thompson,* 74 Iowa 119; *State v. Carmean,* 126 Iowa 291.

With our streets and highways thronged with swiftly moving vehicles, many of which are in the most minute respects the same in construction and appearance, the necessity of providing a certain means of identification of one from the other and of ascertaining certainly their ownership is a matter that concerns not only the protection of the individual owner in the enjoyment of his property, but the rights of the general public as well, in the necessary association of such means of transportation with all the varied activities of our daily life. The state has established an elaborate system for the registering of motor vehicles and the transfer of their ownership. These provisions will be found in Chapter 251 of the Code of 1924. These measures are designed not merely for the protection of the owner whose property has been stolen, by affording a means of identifying it. They afford protection for the public revenues derived from the license fee imposed on such vehicles, are of material aid in the enforcement of laws and ordinances regulating their use, and are for the benefit of the general public in its daily contact with this essentially modern and widespread method of transport. In these latter aspects, at least, the statutes in question are clearly an exercise of the police power. All authorities agree that, in the exercise of that power and in the interest of the public welfare, acts otherwise innocent may be declared to be criminal, and "that he who shall do them, shall do them at his peril, and will not be heard to plead in defense good faith or ignorance." *United States v. Balint,* supra.

By Section 4898, Code of 1924, it is made unlawful for any person to buy or sell any second-hand motor vehicle without receiving or furnishing a certificate of registration and transfer from the officer whose duty it is to register such vehicles.

Section 5083 is as follows:

"Under a charge of possessing a motor vehicle, the serial or engine number of which is defaced, altered, or tampered with, it shall be a complete defense that the accused at the time of such possession had in his possession a certificate of registration and transfer from the officer whose duty it is to register

or license motor vehicles in the state in which said motor vehicle is registered, showing good and sufficient reason why numbers are defaced, changed, or tampered with, the original serial or engine number, and the ownership of said motor vehicle.''

The statute does not, by its terms, make knowledge on the part of the accused that the number on a car in his possession has been altered, defaced, or tampered with an essential element of the offense. When we consider the statute in connection with the provisions for the registration and transfer of motor vehicles, and in the light of its evident purpose, it would seem plain that it was not the intent of the legislature to make knowledge on the part of one in possession of the vehicle that the numbers had been altered or defaced an essential element of guilt, but rather to put upon him the burden of knowing at his peril that such is not the fact, or, in case there has been such an alteration, of procuring the certificate provided for in Section 5083. That section expressly provides that such a certificate shall be a complete defense to the charge of having in his possession a car the numbers of which have been altered, defaced, or tampered with. The purchaser of a second-hand car is thus afforded the fullest opportunity, merely by taking the precaution pointed out in the statute, to protect himself.

What has been said and the authorities cited dispose not only of the claim of appellant with respect to the construction of the statute, but of the further contention that the statute so construed is unconstitutional.

There was no error in the instruction given, or in refusing those asked on this point.

II. Whether the engine number on the car found in the possession of the appellant had been altered, was a question of fact, to which most of the evidence introduced on the trial was directed. In that connection, the court properly admitted testimony tending to identify the car in the appellant's possession, by various peculiarities in its appearance, as one that had, a short time before, been stolen from the owner in Ames, and the engine number of which was different from that appearing on the car in the possession of the appellant. Such testimony tended to support the contention of the State that the engine number, which it was claimed showed evidences of having been tampered with, had been changed.

III. Under the evidence, it was clearly a question for the jury whether the engine number on the car in appellant's pos-session had been altered.

IV. Complaint is made of the refusal of the court to give an instruction to the effect that any statements made by the defendant after his arrest which were induced by statements of

2. CRIMINAL LAW: evidence: confessions (?) or contradictory statements (?)

the officers that it would be better for him to talk, or that he would be imprisoned if he did not talk, were not voluntary, and should not be considered by the jury.

The record discloses nothing requiring such an instruction. There was testimony that appellant made certain contradictory statements as to how and of whom he obtained the car in ques-tion. They were not confessions of guilt of the crime charged. *State v. Novak,* 109 Iowa 717; *State v. Abrams,* 131 Iowa 479. While there was testimony, elicited on cross-examination of a witness, the deputy sheriff, who testified to some of these alleged admissions, from which it might have been found that, on one occasion, at the county attorney's office, after he was arrested, the defendant was told that he would be imprisoned unless he talked, it does not appear that any such admissions were made at that conversation. Nor is there anything in the record from which it could be inferred that such admissions were thereafter made under the influence of what was there said.

It is the well-settled rule in this state with respect to a con-fession of guilt that, where it appears to have been free and voluntary, the burden is upon the defendant to show coercion or

3. CRIMINAL LAW: evidence: confessions: burden of proof.

inducement such as to require its exclusion. *State v. Storms,* 113 Iowa 385; *State v. Icen-bice,* 126 Iowa 16. The prevailing rule is that confessions are *prima facie* voluntary. *State v. Storms,* supra; *Rufer v. State,* 25 Ohio St. 464; *Commonwealth v. Culver,* 126 Mass. 464; *State v. Laughlin,* 171 Ind. 66. See, also, note to *Ammons v. State* (80 Miss. 592), in 18 L. R. A. (N. S.) 783. In jurisdictions where preliminary proof of the voluntary char-acter of a confession seems to be required, the same rule is not applied to mere admissions relating to collateral facts from which guilt may be inferred. *State v. Guie,* 56 Mont. 485; *Wilson v. State,* 17 Okla. Cr. 47 (183 Pac. 613); *People v. Jan John,* 144 Cal. 284. See, also, 16 Corpus Juris 628.

The alleged admissions in question appear to have been voluntarily made. Nothing was shown to the contrary. There was no error in refusing the requested instruction.

V. The court in one instruction incorporated the substance of Section 5083, and in three others referred to the subject-matter of the section. In one, the failure of a party having in **4. CRIMINAL LAW: trial: instructions: unpleaded defense.** his possession a car with the engine number altered to have the certificate there provided for, was said to be an essential element of the offense charged. In another, the court instructed that, if the jury found that the defendant had in his possession the car described in the indictment, and that the engine number thereof had been altered, defaced, or tampered with, the verdict should be for the State, unless it was found by a preponderance of the evidence that the defendant then had such certificate; and in still another, that, if they found beyond a reasonable doubt that defendant was in possession of such car, and that the engine number thereof was altered, defaced, or tampered with, and they further believed that he did not have such certificate, they should find a verdict of guilty.

There was no claim on the part of the appellant that he had the certificate provided for in Section 5083, nor did the State undertake to show that he did not have such certificate. There was no evidence on the subject. The provisions of that section do not create an exception to the crime defined by Section 5080, and the State was not required either to plead or to prove that the defendant did not have the certificate there provided for. *State v. Mahan,* 81 Iowa 121; *State v. Conable,* 81 Iowa 60. The possession of such a certificate by one charged with the offense was purely defensive—made so by the express provisions of the statute.

If the failure of the defendant to have the certificate provided for by Section 5083 was, as the court said, one essential element of the crime, the burden was clearly on the State to show that fact beyond a reasonable doubt. Yet the court, in one subsequent instruction, put the burden of establishing that he did have the certificate on the defendant, and in another, said that, if the jury believed that he did not have it, and found beyond a reasonable doubt that he had possession of a car with the engine number altered, they should convict. The only in-

ference to be drawn from the latter instruction was that the State was required to show that he did not have the certificate, but only by a preponderance of the evidence. The defendant could not complain that a greater burden was put upon the State than it was required to carry; but, aside from the inconsistent and conflicting rules given for the guidance of the jury, the fatal vice of the instructions lies in the fact that they submitted and required a finding on a question that was not in issue, and upon which there was no evidence. The defense that the defendant had a proper certificate showing a good and sufficient reason why the engine number was altered, was one which, under the law, was available to him, but which he did not present, and on which he did not rely.

We are not to be understood as holding that a reference in the instructions to the provisions of Section 5083, in connection with the statute under which the indictment was found, would necessarily be prejudicial error; but we do hold that it was error to submit to the jury a question which was not in issue, and upon which there was no evidence, and to require a finding upon a possible defense of which the defendant did not seek to avail himself. It was the defendant's right to have the attention of the jury directed only to the questions at issue under the indictment and the evidence; and to require them to find upon a permissible affirmative defense which was not interposed by him, and upon which there was no evidence, was clearly prejudicial.

The question is controlled by the doctrine announced in *Granteer v. Thompson*, 203 Iowa ——, where it was held that, in an action for malicious prosecution, where the defendant made no claim that the plaintiff was guilty of the offense for which he had been prosecuted, it was error to submit to the jury the question of his guilt thereof.

VI. Criticism of an instruction relating to evidence of the good character of the defendant is directed to the statement therein that good character is a "circumstance which may be shown for the purpose of rebutting the presumption of guilt arising from circumstantial evidence."

The portion of the instruction objected to cannot be approved. Where the good character of a defendant is shown, it is to be considered by the jury and given such weight as the

5. CRIMINAL LAW: jury may determine it is entitled to; and this is
evidence: good
character: ef-
fect.
true without regard to the character of the evidence, whether direct or circumstantial.
*State v. Northrup*, 48 Iowa 583; *State v. Horning*, 49 Iowa 158; *State v. Lindley*, 51 Iowa 343; *State v. House*, 108 Iowa 68; *State v. Schumacher*, 195 Iowa 276. Nor is the error cured by the further statement of the instruction that evidence of good character should be given consideration irrespective of whether the other evidence was conclusive or inconclusive, and that its weight was to be determined by the jury under all the facts and circumstances. The latter statement would appear to refer to the effect, rather than to the kind or character, of the evidence, and to leave unqualified the previous direction, limiting, in effect, the consideration of evidence of good character to a case where circumstantial evidence alone was relied upon. But, if this is not true, the two paragraphs of the instruction are contradictory. *State v. Schumacher*, supra.

Neither can it be said that the evidence relied upon by the State was wholly circumstantial, and that, for that reason, the instruction was not prejudicial.

Other questions presented are either without merit or are not likely to arise on a retrial, and require no consideration.

For the errors pointed out, the judgment is reversed, and the cause remanded.—*Reversed and remanded*.

EVANS, C. J., and STEVENS and FAVILLE, JJ., concur.