238 P.2d 450

**STATE v. DAVIS.**

No. 7727.

Supreme Court of Idaho.

Nov. 20, 1951.

Rehearing Denied Dec. 19, 1951.

Vernon K. Smith, Boise, for appellant.

Robert E. Smylie, Atty. Gen. of Idaho, and J. R. Smead, Asst. Atty. Gen. and Merlin S. Young, Pros. Atty., Boise, for respondent.

GIVENS, Chief Justice.

Appellant was convicted of grand larceny through the theft of an automobile, February 13, 1947.

Smilanich, owner of a 1941 Chevrolet Club coupe, the automobile in question, left it unlocked in the parking lot before the Circle M, some kind of a business establishment on Highway 30 a mile or two west of Boise in Ada County. When Smilanich came out of the Circle M about forty-five minutes later, the automobile was gone. He immediately reported the theft, giving a list of the contents of the automobile, to the Sheriff's office.

April 22, same year, Smilanich saw the automobile parked by the Black Diamond on Vista and Overland Sts., Boise. He and his friend, Cansdale, while examining the automobile to establish its identity, were accosted by a woman, impliedly though not definitely shown to be defendant's wife, who inquired as to their interest in the car. They asked her who owned the car and she immediately drove away. Being satisfied it was Smilanich's car, they blocked its egress by putting one of their cars in front of it and one immediately behind it, and called the Sheriff's office. When appellant came out of the Black Diamond to the car, they asked him who it belonged to and he said: "A garage." They asked him to wait, saying the Sheriff had been called. He declined and extricated the car by backing and jamming the interfering cars, and hastily drove away, pursued by Cansdale in his car. Cansdale was unable to keep up with defendant, overtake or stop him, but pursued him—sometimes going 80 to 85 miles per hour—and finally lost contact with him near Eagle across the Boise River and some eight or nine miles from the Black Diamond.

The automobile was found June 1949 near Milwaukie, Oregon, wrecked and in a

dilapidated condition, an attempt having been made to obliterate the identification numbers thereon.

Some few days after April 22, 1947, the Sheriff contacted appellant, who claimed the reason for his actions at the Black Diamond was, he thought Smilanich and Cansdale were men he previously had been in trouble with over a car deal, who had threatened to beat him up; that a few days prior he had sold this car to "some traveling man," never identified or produced.

Appellant's defense was a claimed purchase of the automobile through and from the mythical, ubiquitous, but evanescent stranger of uncertain name, lineaments, and at the time of the trial, of unknown whereabouts, redolent of the itinerant, convenient ephemeral horse trader of horse stealing days; alibi evidence tending to show that he was on his way to, at, or coming back from, Seattle at the time of the claimed theft.

When the theft was reported to the Sheriff's office, a typed list was made therein of the contents of the car as reported by Smilanich. Offered in evidence, appellant offered this objection: "Mr. Smith: I object to the exhibit as not being properly identified. He had nothing to do with the preparation of it, and it was apparently prepared by somebody else. It is incompetent, irrelevant and immaterial." There was no showing the articles listed were ever found. The specific objection made that the exhibit was not properly identified was not well taken. All it purported to be was a list made in the Sheriff's office pursuant to what Smilanich had told them. The list, therefore, completed the official records showing everything Smilanich told the Sheriff's office at the time he reported the theft. The exhibit probably was immaterial, but the error, if any, was harmless. If these articles were in the automobile when Smilanich left it, they might have been taken out before the car was stolen; if not, they were in there when it was stolen.

George Denney, Deputy Sheriff of Ada County, saw the car when it was found in Oregon and as to its identity by its numbers, testified as follows:

"A. On a '41 Chevrolet motor, there are two numbers. One is called the 'public' motor number and can be readily seen upon raising the hood of the car. It is on the right side of the motor, near the right of it, and about the center of the motor at the back end. There is a 'secret' motor number on a '41 Chevrolet motor that can be found under what is called the 'valve inspection plate,' which is a plate that covers the valves, and you must remove it, and the motor number will be found on a portion of that motor where the plate bolts to the motor. It is on the front part of the motor, about the center from up and down, and in that particular spot where there should have been a number there was none visible to the naked eye. It was smooth as

120

was the rest of the valve inspection plate part there.

"Q. Just continue. What further did you do? A. There is a way of ascertaining if there had ever been numbers placed on that piece of metal. When a tremendous amount of pressure is put on a metal * * *.

　　* 　 * 　 * 　 * 　 * 　 *

"A. When metal is injured, such as stamping a number into it, or a blow onto it, the injury goes deeper than is visible to the eye. The part that is injured can be removed, to the eyesight, and yet that injury is still in the metal. There is an operation known as 'acid-heat treatment' that will burn the injured molecules of metal so that they will come up and be visible to the eye.

　　* 　 * 　 * 　 * 　 * 　 *

"And the rest of the metal next to the injured particles will be shiny just as the new metal is. We placed acid and heated that section where that number should have been with an acetylene torch until it was very hot, and the motor number the original number that was on that block before it had been ground off came up and was very visible to the naked eye.

"Q. Mr. Denney, how long have you been in the police work? A. About thirteen years, sir.

"Q. What, if any, training have you received in regard to this matter of identifying numbers that you have just testified about? A. Since 1939 I have attended seven F. B. I. Schools. The Auto Theft Bureau have men in the field that train us in our own business. While I was in the Army I went to the Criminal Investigation School, and in each of those schools they teach you that metal process. It is known as the 'acid-heat treatment' to bring up hidden numbers on metal, whether it be guns or any other type of metal, for identification purposes.

"Q. Now, did you say that you were able to see that number that you brought up in the manner you have described? A. Yes, sir.

"Q. Do you know what that number was?

"Mr. Smith: Just a moment. I object to the question on the ground that it calls for an answer as to the contents of a writing which is not the best evidence. Section 9-411 of our Idaho Code.

"The Court: Overruled.

"A. That number was AA838745."

This was the number on Smilanich's automobile.

The above ruling is urged as error. Appellant cites no authority except the statute to the effect these stamped numbers on the metal of the motor are "writings" or "written instruments" within the meaning of the statute, and these numbers are identification marks, not writings under the cited statute. People v. Congress Radio, 133 Misc. 542, 232 N.Y.S. 647, 226 App. Div. 784, 234 N.Y.S. 860, and 251 N.Y. 572,

168 N.E. 432; Donaldson v. United States, 7 Cir., 82 F.2d 680; People v. Oberby, 323 Ill. 364, 154 N.E. 125; State v. Dunn, 202 Iowa 1188, 211 N.W. 850; Hall v. State, 171 Ark. 787, 286 S.W. 1026; State v. Holland, 141 Kan. 307, 40 P.2d 469; State v. Derrickson, 1 W.W.Harr. 342, 31 Del. 342, 114 A. 286; People v. Billardello, 319 Ill. 124, 149 N.E. 781, 42 A.L.R. 1146; 22 C.J. S., Criminal Law, § 703, page 1195.

■ The expert evidence of the witness, as qualified, was admissible. Burch v. Valley Motor Lines, 78 Cal.App.2d 834, 179 P. 2d 47, at page 51.

■ Photographs were taken of the automobile when found which depicted it and surrounding external objects and the interior, in black and white or shades thereof—not in other colors. Appellant objected on the ground that because not in true color, the photographs were not admissible for use by Smilanich and Cansdale to identify the automobile found in Oregon as Smilanich's car. The difference in color of the automobile when stolen, when found, and the condition and color of the interior were exhaustively gone into in the evidence and no possible misunderstanding or mistake was suggested because the photographs were not colored and they were clearly admissible. State v. Kleier, 69 Idaho 278, at page 286, 206 P.2d 513; State v. Powell, 71 Idaho 131, 227 P.2d 582, at page 585.

■ David Grossman's name was endorsed on the information as a witness for the State as "Crossman." At the trial this mistake was corrected and over appellant's objection that Grossman's name was not endorsed as required by the statute, he was allowed to testify. This was not error. State v. McGann, 8 Idaho 40, 66 P. 823; State v. Allen, 20 Idaho 263, at page 272, 117 P. 849.

■ Appellant urges it was error to refuse his requested instruction No. 3 telling the jury appellant was not charged with illegal possession of a stolen car, but larceny. So far as possession of a recently stolen car tended to prove appellant was guilty of larceny, Instruction No. 7 accurately and correctly covered the pertinent point and is not subject to appellant's criticism that it left the impression the jury might find appellant guilty even though the actual original felonious taking had been by some one other than appellant. There is no legal distinction between principal and accessory. State v. Kleier, 69 Idaho 278, at page 286, 206 P.2d 513.

■ The Court is not required to instruct on crimes not charged. State v. Williams, 36 Idaho 214, 209 P. 1068; State v. Griffith, 55 Idaho 60, 37 P.2d 402; State v. Vanek, 59 Idaho 514, at page 520(4), 84 P.2d 567.

Appellant was tried twice for this offense. At the first trial, the jury disagreed and without defendant or his counsel being present, was discharged. At the opening of the second trial no objection was made

and no pleas of former or once in jeopardy or former acquittal were interposed as required by Sections 19–1601, 1712, 1713, I. C., nor tried, Section 19–1901, I.C.

█ It was not until the time of pronouncement of judgment, when a motion in arrest thereof was made because of the above incident at the first trial, and that there was no new arraignment at the beginning of the second trial. The motion was not timely under the above Sections of the statute and the objection thereby waived. In re Allison, 13 Colo. 525, 22 P. 820, 10 L.R.A. 790; Mowels v. State, 52 Okl.Cr. 193, 11 P.2d 205; People v. Kelly, 132 Cal.App. 444, 22 P.2d 526; People v. Frank, 134 Cal.App. 211, 25 P.2d 486; People v. Fry, 137 Cal.App. 525, 31 P.2d 204; Ex parte Moore, 29 Cal.App.2d 56, 84 P.2d 57; People v. Allen, 47 Cal.App.2d 735, 118 P.2d 927; State v. Carte, 157 Kan. 139, 138 P.2d 429.

Appellant purchased a motor of the same model as Smilanich's automobile at an automobile wrecking yard in Las Vegas in September, 1946. The balance of this particular automobile had been practically demolished in a wreck. A photostatic copy of the records of the Department of Law Enforcement in Idaho shows that Mrs. Frank E. Davis, 1813 Jessie Street, Boise, applied for a certificate of title based on the number on this motor. Appellant was living at this residence. No connection between this application for certificate of title and the Smilanich car was shown.

State's Exhibit 16 apparently was a California certificate of title to one Scott on the car containing this motor, and Exhibit 17 is the reverse side. Sheriff Headrick testified that the license number on the car seen at the Black Diamond was registered to Mrs. Frank E. Davis and was based on identification motor numbers which did not correspond with those on the Smilanich car, but did not say what the license number was or the motor numbers on which it was based; thus the only connected and material feature of this phase of the controversy disclosed by the record is that Mrs. Frank E. Davis had a license number which was on the Smilanich car seen at the Black Diamond and that the motor number on which such license was based was not the motor number on the Smilanich car. State's Exhibit 15, the application for certificate of title issued to Mrs. Frank E. Davis, was objected to by appellant, as pertinent here: " * * *; there is no identification and that person is not a party to this suit, and no connection of that person is made with this suit."

█ The fact that the license number on the stolen car, when seen at the Black Diamond, was issued to Mrs. Frank E. Davis whose address was where defendant lived, was sufficient as against the objection to identify and connect her and the license plate on the stolen car with defendant, as he was driving the car at the Black Diamond. If thus connected by legitimate implication or inference with defendant,

this entire circumstance was admissible as indicating a plan or design to conceal the identity of the stolen car. State v. Adams, 10 Idaho 591, at page 597, 79 P. 398. On the other hand, if the evidence relative to the Scott motor and its number was so disconnected that it should not have been admitted, is but to say it is immaterial. The episode of the Scott motor and asserted lack of connection between the motor number thereon and the number (not shown) which was the basis of the license belonging to Mrs. Frank E. Davis on the stolen car at the Black Diamond, and appellant's attitude thereto, were so exhaustively and completely delineated by appellant's cross-examination of Hunt, that no prejudice resulted from the admission thereof, even if it should be considered immaterial. State v. Levy, 9 Idaho 483, at page 510, 75 P. 227; State v. Ray, 32 Idaho 363, at page 366, 182 P. 857; State v. Jensen, 47 Idaho 785, at pages 791–792, 280 P. 1039.

Appellant's motion for a new trial was based upon the above errors, considered and disposed of.

■ A detailed analysis of the evidence is unnecessary and would serve no useful purpose as we have concluded from a careful examination thereof that it is, though conflicting, sufficient to sustain the verdict. State v. Brassfield, 40 Idaho 203, 232 P. 1; State v. Davis, 57 Idaho 413, 65 P.2d 1385; State v. Gilbert, 55 Idaho 210, 142 P.2d 584; State v. Kleier, supra.

Judgment of conviction affirmed.

PORTER, TAYLOR, THOMAS, and KEETON, JJ., concur.

On Petition for Rehearing

GIVENS, Chief Justice.

Appellant in his petition for rehearing rather ingeniously argues that the discharge of the jury in the first trial when they could not agree, neither appellant nor his attorney being present, so altered the case there should have been a re-arraignment.

When the case was called for trial the second time, resulting in appellant's conviction, the record shows the Clerk read the information to the jury and stated the plea of the defendant of "not guilty."

■ ■ Without apparent exception, the courts have held that a plea of former jeopardy or former acquittal is not covered by the plea of "not guilty," but they are special pleas and must be interposed as such. There was, thus, at the inception of the second trial ample opportunity for appellant to have interposed the plea he now contends should be entertained, though never interposed, not mentioned in his motion for a new trial and not even suggested until at the time of the sentence.

Appellant relies strongly on Courtney v. State, 41 Okl.Cr., 30, 269 P. 1059, at page 1060. In Daniels v. State, 55 Okl.Cr., 298, 29 P.2d 997, a later case, during the impaneling of the jury and obviously after arraignment, circumstances arose which defendant deemed would support a claim of former jeopardy. The court held that because he had without protest permitted the jury to be impaneled and sworn and proceeded with the trial, he had thereby waived his right to claim former jeopardy and that his objection came too late; thus recognizing that without re-arraignment the plea could and should have been interposed. This case was followed and quoted with approval in Kennamer v. State, 59 Okl.Cr., 146, 57 P.2d 646, at page 662, on this point. Hughes v. State, 83 Okl.Cr., 16 172 P.2d 435, at page 438.

To the same effect and particularly with regard to appellant's claim that the discharge of the jury violated his fundamental, constitutional right, holding that such contention must be raised and if not properly raised, is waived, Coppage v. State, 62 Okl. Cr., 325, 71 P.2d 509, at page 513.

█ To avail appellant, such bar must be presented before going to trial, Stough v. State, 75 Okl.Cr. 62, 128 P.2d 1028.

The facts and disposition of the case in the following are so closely in point as to justify quotation therefrom:

"* * * The first contention of former jeopardy and that appellant previously had been discharged on that count was made after the motion for a new trial had been filed on November 8, 1939. The only complaint made was on motion in arrest of judgment filed December 4, 1939. The motion for a new trial was overruled December 6, 1939. We are advised the motion in arrest of judgment is still pending. The immunity from second jeopardy granted by the Constitution (Const. Bill of Rights, § 10) to one accused of crime is a personal privilege which may be waived and which appellant did waive in the instant case. State v. White, 71 Kan. 356, 80 P. 589, 6 Ann.Cas. 132; State v. Ford, 117 Kan. 735, 232 P. 1023. In the Ford case it was said: 'Moreover a motion in arrest of judgment can raise but two questions, neither of which is here involved—whether the court has jurisdiction and whether the information states a public offense. State v. Yargus, 112 Kan. 450, 211 P. 121, 27 A.L.R. 1093. The defense of second jeopardy may be waived, and is waived by the defendant's going to trial on the merits without urging it, taking the chance of a favorable verdict. State v. White, 71 Kan. 356, 80 P. 589, 6 Ann.Cas. 132; see, also, 16 C.J.S.Constitutional Law, § 619, page 1254.' 117 Kan. at page 736, 232 P. at page 1024.

"In the White case it was stated: 'Failing to interpose an objection to entering upon a second trial he must be held to have waived the right to do so, and must abide the result which he invited. State v. Durein [70 Kan. 1], 78 P. 152 [15 L.R.A., N.S., 908].

" ' "To allow a defendant, as was done in this case, to sit idly by during the progress of his trial, and then, upon conviction, set up, upon motion in arrest of judgment or for a new trial, a special defense that he could have raised at the very inception of the trial, would be to sanction a practice which might well be termed trifling with the court." People v. Bennett, 114 Cal. 56, 58, 45 P. 1013.' 71 Kan. at page 360, 80 P. at page 590, 6 Ann.Cas. 132." State v. Maxwell, 151 Kan. 951, 102 P.2d 109, at page 117, 128 A.L.R. 1315.

Petition for rehearing denied.

PORTER, TAYLOR, THOMAS, and KEETON, JJ., concur.